Kevin N. Anderson
Nevada State Bar No. 4512
**FABIAN VANCOTT**
2275 Corporate Cir., Suite 220
Henderson, NV 89074
Telephone:     (702) 233-4444
kanderson@fabianvancott.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ARCHETYPE CAPITAL PARTNERS, LLC, a Nevada limited liability company, | |
| Plaintiff, | **COMPLAINT** |
| vs. | Case No. _____ |
| BULLOCK LEGAL GROUP, LLC, a Georgia limited liability company, and ANDREW SCHNEIDER, an individual residing in Texas, | Judge _____ |
| Defendants. | |

Plaintiff Archetype Capital Partners, LLC ("**Archetype Partners**"), by and through undersigned counsel, hereby files this Complaint against Defendants Bullock Legal Group, LLC ("**Bullock Legal**") and Andrew Schneider ("**Schneider**") (collectively referred to as "**Defendants**"), and allege and state as follows:

## INTRODUCTION

1.      This case arises from Defendants' coordinated scheme to steal Archetype Partners' property, misappropriate Archetype Partners' valuable trade secrets and confidential information to gain an unfair competitive advantage in the specialized litigation finance and mass tort markets, and diverted millions of dollars' worth of business opportunities away from Archetype Partners.

1

2.      Defendants—through calculated, deceptive, and unlawful means—conspired to steal Archetype Partners' proprietary intellectual property relating to its innovative methods for evaluating and funding specialized mass tort litigation, including but not limited to video game addiction ("**VGA**") cases.

3.      Defendant also conspired to steal Archetype Partners' proprietary intellectual property including but not limited: innovative methods for systematic overlap discovery methodologies linking RealPage claimants to PFAS, Camp Lejeune, asbestos, and other tort opportunities through occupation-based and demographic screening protocols, and the underwriting and funding of same.

4.      In carrying out their scheme, Defendants systematically misappropriated Archetype Partners' trade secrets, violated numerous contractual obligations, breached fiduciary duties, converted company property, and committed federal violations including theft of trade secrets.

5.      Simultaneously, Defendants cultivated and created significant business relationships and opportunities using the stolen property, trade secrets, and confidential information to steal business opportunities from Archetype Partners for use by Defendants, significantly harming Archetype Partners in the process.

6.      Archetype Partners brings this action to remedy the extensive harm caused by Defendants' unlawful conduct and to prevent further misappropriation of its proprietary trade secrets and confidential information.

**PARTIES, JURISDICTION, AND VENUE**

7.      Archetype Partners is a Nevada limited liability company with its principal place of business in Nevada. Initially, Archetype Partners was incorporated in Florida as a Florida corporation. The company later converted to a Nevada limited liability company on June 28, 2023.

8.      Bullock Legal is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia.

9.      Schneider was a member of Archetype Partners. Upon information and belief, Schneider is a resident of New Carney, Texas.

10.     This Court has subject-matter jurisdiction pursuant to 18 U.S.C. § 1836(b) for violations of federal law relating to the misappropriation of trade secrets, and 18 U.S.C. § 1964(c) based upon a pattern of racketeering activity.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Archetype Partners' state law claims as those claims are so related to the federal claims that they form the same case or controversy and derive from a common nucleus of operative facts.

12.     Venue is proper in the United States District Court, District of Nevada, pursuant to 28 U.S.C. § 1391(b)(2) because Archetype Partners suffered the consequences of the Defendants' conversion, contracts, and theft that are the subject of this Complaint occurred or were entered into in Nevada. Archetype Partners was damaged in Nevada, and the claims alleged in this action arose in Nevada.

13.     All Defendants are subject to personal jurisdiction of this Court. Schneider was a member of Archetype Partners, conducted business in Nevada, and the subject agreements are governed by Nevada law. Bullock Legal conducted business with Archetype Partners in Nevada. The agreement between Archetype Partners and Bullock Legal is governed by Nevada law. Bullock Legal has had sufficient contact with Nevada, such that they have availed themselves of the laws of Nevada.

## GENERAL ALLEGATIONS

### *Archetype Partners*

14.    Archetype Partners was co-founded by Douglas Mayer ("**Mayer**") and Schneider in 2020. Initially, Mayer owned 51% of the issued and outstanding shares of the company and Schneider owned 49%.

15.    Archetype Partners and Schneider entered into the Stock Redemption Agreement, dated May 25, 2023, whereby Schneider sold 38.271 of his shares in Archetype Partners to Archetype Partners in exchange for payment of $250,000.

16.    After the sale of his shares back to the company, Schneider's ownership of the outstanding shares in Archetype Partners was reduced to 19% of the total shares issued.

17.    On June 28, 2023, Mayer and Schneider executed the Operating Agreement of Archetype Capital Partners, LLC ("**Operating Agreement**"), which controls their relationship.

18.    Pursuant to the terms of the Operating Agreement, Archetype Partners was converted from a Florida corporation to a Nevada limited liability company.

19.    Under the terms of the Operating Agreement, Archetype Partners is established and governed by Nevada law.

### *Archetype Partners' Trade Secrets and Proprietary Information*

20.    Mayer and Schneider founded Archetype Partners with the vision of developing innovative litigation finance solutions for law firms.

21.    Archetype Partners developed its own models for underwriting and reviewing litigation, claims, and lending for mass tort litigation, such as VGA cases.

22.    Archetype Partners developed its own trade secrets that are the subject of this lawsuit (and referenced in the Operating Agreement).

4

23.   Archetype Partners' trade secrets include, but are not limited to, (without publicly revealing herein the secret information)[1] the following:

    a.   actual and prospective customer names, lists, contact information in the litigation funding market, including but not limited to, customers seeking litigation funding;

    b.   actual and prospective investor list and contact information;

    c.   actual and prospective defendant specific information databases for claims analysis;

    d.   particular research and development strategies and efforts in creating a lending model to cater to the needs of customers and the market;

    e.   specialized process, procedures, and compiled research regarding the creation of the lending models;

    f.   multi-tiered valuation framework;

    g.   causation analysis framework;

    h.   alternative causation strategies and framework;

    i.   multi-litigation overlapping injury matrices and evaluation;

    j.   integrated claims processing workflow;

    k.   lender specific financing terms;

    l.   pre-use customers' and potential customers' presentations and marketing materials;

    m.   customers' and potential customers' financing terms;

---

[1] To avoid public disclosure of the trade secret, a more particular description of Archetype Partners' Trade Secret will be provided later in the litigation under a protective order entered by the Court.

n.  investment memoranda prepared by Archetype Partners in anticipation of distribution to investor/lenders related to VGA and other multi-district litigations;

o.  systematic process for potential plaintiff intake and determining the qualification of each potential plaintiff, verifying the potential plaintiff's claims, valuing the potential plaintiff's injury and dollar value of injury, developing an injury matrix regarding the value of the injury, and developing a complete claim processing methodology;

p.  vendor outlines and proposals to use with partnering with identified potential partners; and

q.  technologies and methodologies for underwriting and identifying claims in large scale mass tort, class action and multi-district litigation including but not limited to: RealPage antitrust litigation; PFAS litigation, Camp Lejeune litigation, asbestos litigation, and other litigation opportunities.

(Collectively "**Archetype Partners' Trade Secrets**".)

24.    Archetype Partners' Trade Secrets and Confidential Information are extremely valuable to the company – having been developed over several years through thousands of hours of Archetype Partners' efforts and significant financial investments – are not generally known by or available to the general public, and have derived independent economic value from not being generally known to or readily ascertainable by proper means by other persons.

### *Archetype Partners' Steps to Protect Trade Secrets and Confidential Information*

25.    Archetype Partners has gone to great lengths, and made more than reasonable efforts, to protect Archetype Partners' Trade Secrets and Confidential Information.

6

26.     Section 10 of the Operating Agreement imposes duties of confidentiality and other restrictive covenants on Schneider, requiring him to hold and keep in strictest confidence and not use, without the prior written approval of Mayer, for his own benefit or the benefit of any party, or disclose to any person, any "Confidential Information," as defined in the Operating Agreement. (This information is hereinafter referred to as "**Archetype Partners' Confidential Information**".) (Collectively, Archetype Partners' Trade Secrets and Archetype Partners' Confidential Information and are referred to herein as "**Archetype Partners' Trade Secrets and Confidential Information**".)

27.     Section 5.4 of the Operating Agreement outlines the "Duties of Parties," and provides that Schneider's rights to engage in other business activities are expressly limited by Section 10. By imposing those restrictions, the Operating Agreement expressly prescribes fiduciary duties on Members, including duties of utmost good faith and loyalty, confidentiality, and non-use of Archetype Partners' Trade Secrets and Confidential Information, all of which Schneider was obligated to uphold.

28.     The Operating Agreement also prohibits Schneider from competing against Archetype Partners for a period of 12 months following the termination of his membership interest in the company.

29.     The Operating Agreement further prohibits Schneider from soliciting any Archetype Partners customers, either directly or indirectly, from influencing any of the company's clients, customers, licensors, or licensees to not purchase Archetype Partner's products or services, or from influencing any clients, customers, licensors, or licensees to purchase the products or services from other companies that provide the same product or service.

30.     Pursuant to the Operating Agreement, the parties agreed that in the event a party breached the confidentiality, non-compete, or non-solicitation provisions, the other party would suffer irreparable harm and be entitled to injunctive relief in addition to any other legal and equitable remedies available.

31.     Archetype Partners never waived and it not agreeable to waiving any portion of the Operating Agreement, portions of which survive the resignation of a partner and remain fully enforceable.

32.     Archetype Partners has similar confidentiality provisions in employee contracts to protect Archetype Partners' Trade Secrets and Confidential Information.

33.     In addition to the aforementioned agreements, Archetype maintains a comprehensive set of security and data privacy controls, based on industry standards, to ensure that only authorized members hold access to systems and data.

34.     These include, but are not limited to, data encryption at rest and in transit using Advanced Encryption Standard (AES), Transport Layer Security (TLS), centralized access and authentication through Single Sign On (SSO), and various protective and detective security platforms and protocols that include, but are not limited to, insider threat tracking of all activities on company platforms, screen recording, email logs, threat logs, keystroke logs, endpoint detection and response (EDR), suspicious authentication alert triage and blocking, and anti-phishing technologies.

35.     Additionally, Archetype Partners, with Schneider's participation and assistance, created the "Archetype Incident Response Plan" that outlines the company's response to information security incidents, and defines "incident" as "[a] violation or imminent threat of violation of computer security policies, acceptable use policies, or standard security practices that jeopardizes the confidentiality, integrity, or availability of information resources or operations."

36.     Archetype Partners also has a robust security awareness training program, in conjunction with recurring simulated phishing attack campaigns.

37.     In addition to the internal protections implemented by Archetype Partners, the company requires customers and potential customers to sign a Non-Disclosure Agreement before any of Archetype Partners' Trade Secret and Confidential Information is shared.

### Relationship with Schneider

38.     From July 27, 2020 through February 18, 2025, Schneider was a Member of Archetype Partners.

39.     During his time at Archetype Partners, Schneider had access to, was exposed to, received, and was entrusted with large amounts of Archetype Partners' Trade Secrets and Confidential Information.

40.     During his time at Archetype Partners, Schneider was a party to and bound by the Operating Agreement, Incident Response Plan, Information Security Policy & Data Privacy Program, and other contractual protections that expressly prescribe fiduciary duties on Schneider.

41.     Schneider helped draft and enforce the confidentiality provisions of the Operating Agreement and Incident Response Plan & Data Security Plan.

42.     Schneider abruptly resigned and attempted to surrender his membership interest on December 22, 2024. However, Archetype Partners did not formally accept his voluntary withdrawal under the Operating Agreement until February 18, 2025. Prior to this formal acceptance date, Schneider was still considered a member and partner of Archetype Partners, and all work product created during this period remained the property of Archetype Partners.

43.     Schneider wrongfully retained Archetype Partners' computer and ignored requests to return the computer, including all of the information contained on the computer.

*Relationship with Bullock Legal*

44.     Bullock Legal was a potential customer of Archetype Partners. Archetype Partners and Bullock Legal executed a Non-Disclosure Agreement in May 2024 ("**Bullock Legal NDA**") for purposes of allowing Bullock Legal and Archetype Partners to share confidential information between them as to evaluate investment opportunities that would assist Bullock Legal in obtaining litigation funding, increase its client acquisition on VGA cases, and reduce per-case qualification and claims work up costs.

45.     Pursuant to the Bullock Legal NDA, Bullock Legal agreed "not to disclose, or allow disclosure of, all or any portion of the Confidential Information or data of whatever kind and in whatever form, and whether written or oral, provided to them in connection with the Opportunity."

46.     Under the Bullock Legal NDA, Bullock Legal also agreed to notify Archetype Partners "as soon as reasonably practicable" if it "suspects, or becomes aware of, any unauthorized use, storage, copying, or disclosure of any Confidential Information."

47.     The Bullock Legal NDA further stated that Archetype Partners' Confidential Information may only be shared with Bullock Legal's representatives "strictly on a need to know basis for the sole purpose of assisting" Bullock Legal "in analyzing the [lending] opportunity" but that the Confidential Information must be kept "confidential in accordance with" the Bullock Legal NDA.

48.     Archetype Partners never waived and is not agreeable to waiving any portion of the Bullock Legal NDA, which remains fully enforceable and in effect.

49.     Bullock Legal agreed to use Archetype Partners' Confidential Information for the purposes of evaluating the opportunities to obtain litigation funding (for which Archetype Partners would receive a fee), and related to entering into a consulting agreement with Archetype

Partners to assist Bullock Legal in increasing its client acquisition on VGA cases, and reducing its per-case qualification and claims work up costs.

50.    In the event Bullock Legal breached the terms of the agreement, it agreed that Archetype Partners is entitled to temporary and/or permanent injunctive relief restraining Bullock Legal from any activity that may result in or continue a breach of the Bullock Legal NDA without the need to show irreparable harm.

51.    It is typical in Archetype Partners' industry to pay a 2% fee for underwriting and origination of a loan. It was understood Bullock Legal would pay Archetype Partners such a fee each time funding is secured through Archetype Partners or when utilizing Archetype Partners' Confidential Information.

### Defendants' Scheme to Misappropriate and Steal Archetype Partners' Trade Secrets and Confidential Information

52.    While he was a Member of Archetype Partners, Schneider worked with Bullock Legal as a potential customer of Archetype Partners.

53.    As an Archetype Partners representative, Schneider required Bullock Legal to execute and sign the Bullock Legal NDA before sharing Archetype Partners' Trade Secrets and Confidential Information with Bullock Legal.

54.    After execution of the Bullock Legal NDA in May 2024, Schneider, on behalf of Archetype Partners, began working with Bullock Legal and providing information that would allow Bullock Legal to evaluate the investment opportunities and enter into an agreement with Archetype Partners.

55.    Mayer in his capacity as CEO of Archetype Partners requested Schneider get a standard consulting agreement signed by Bullock Legal that would memorialize the fee to be paid to Archetype Partners for underwriting and helping place a loan for Bullock Legal.

56.     However, upon information and belief, in or around May, June, or July of 2024, Schneider began implementing a scheme whereby he would leave Archetype Partners and take Archetype Partners' Trade Secrets and Confidential Information with him, in violation of the Operating Agreement and the fiduciary duties prescribed by the Operating Agreement, the Incident Response Plan, Information Security Policy & Data Privacy Program, and other contractual protections, and join with Bullock Legal.

57.     Schneider secretly discussed his plan with Bullock Legal via email and telephone.

58.     In late September and early October 2024, Schneider began sending Bullock Legal Archetype Partners' Trade Secrets and Confidential Information to allow Bullock Legal to use the trade secrets and information to secure alternative funding (not through Archetype Partners) for its VGA tort claim cases.

59.     In connection with their efforts to misappropriate Archetype Partners' Trade Secrets and Confidential Information, the Schneider and Bullock Legal sought ways to actively work together outside of the Bullock Legal NDA.

60.     To that end, Schneider proposed to Mayer an arrangement whereby Schneider would become "**Settlement Counsel**" for Bullock Legal. When asked, Schneider explained that he would "work with Tina in the settlement room to make sure she got a good deal from the named defendants in that case." (Schneider said he could not show Mayer the agreement as it was privileged.) Mayer and Schneider discussed that having Schneider as an insider would also help Archetype Partners stay involved with Bullock Legal's litigation funding and VGA claims review process. With this understanding of the arrangement Mayer agreed that Schneider should work with Bullock Legal as Settlement Counsel.

61.     Upon information and belief, pursuant to Defendants' plan to misappropriate and steal Archetype Partners' Trade Secrets and Confidential Information, on September 27, 2024,

Schneider and Bullock Legal secretly executed a Joint Venture Agreement between Tina Bullock and Schneider VGA Litigation ("**Schneider/Bullock JVA**").

62.    Upon information and belief, the Schneider/Bullock JVA has explicit instruction of the duties of Schneider to include only the following:

        a.    "[P]repare a settlement framework that maximizes the value of the overall [VGA] litigation instead of individual claimants."

        b.    Participate in—and support—settlement negotiations.

        c.    Actively take part in negotiations.

        d.    Assist Tina Bullock during those negotiations by providing strategic modeling.

        e.    Identify and analyze negotiating points - Pinpoint potential bargaining issues and evaluate them so that Bullock is fully prepared.

        f.    Perform timely reviews of settlement proposals - examine each proposal promptly and assess its impact on the class.

        g.    Analyze downstream litigation effects - evaluate how the claim—and any eventual settlements—could affect future litigation based on the same theory of injury, including potential offsets when non-settling defendants later become settling defendants."

(Collectively herein referred to as the "**Settlement Counsel Activities**".)

63.    Upon information and belief, after the Schneider/Bullock JVA was signed Schneider and Bullock Legal conspired between themselves to commence activities outside the Settlement Counsel Activities by including other parties in furtherance of misappropriating and stealing the Archetype Partners' Trade Secrets and Confidential Information as well as

circumventing Archetype Partners in other business dealings including but not limited to any further lending Bullock Legal would seek.

64.    In October and November 2024, in furtherance of their scheme, Schneider sent Bullock Legal additional Archetype Partners' Trade Secrets and Confidential Information regarding the methodologies, alternative causation, and contributing factors as offsets for monetary value.

65.    Using Archetype Partners' Trade Secrets and Confidential Information, in October 2024, Bullock Legal was successful in obtaining a refinancing of their current loan for hundreds of thousands of dollars in litigation funding for the VGA Cases using Archetype Partners' model. However, Bullock Legal failed to inform Archetype Partners of the use of the trade secrets and confidential information and failed to compensate Archetype Partners as anticipated by the Bullock Legal NDA.

66.    Bullock Legal and Schneider identified SimplyConvert, a technology platform for client data housing, document housing and settlement administration, among other technology providers to be the operational hub for Bullock Legal, providing services for the VGA litigation, which Schneider and Bullock Legal knew or should have known competed directly with the technology and capabilities of Archetype Partners.

67.    SimplyConvert formalized its relationship with Bullock Legal through a "Data Hosting and Services Agreement for Gaming Addiction Claimant & Settlement Administration Portal" on or around November 23, 2024, and a comprehensive "Video Game Addiction Data Hosting and Claimant Workup Services Agreement" executed on or around January 7, 2025, included BlueKey Tek, LLC ("**BlueKey Tek**")[2] as an authorized data sharing partner.

---

[2] Upon information and belief, Tina Bullock, the managing partner of Bullock Legal, is the registered agent for BlueKey Tek and BlueKey Tek serves as an affiliate and vendor for Bullock Legal.

68.     Jessie Hoerman, the founder and CEO of SimplyConvert, worked closely with Bullock Legal and Schneider to implement Archetype Partners' proprietary methodologies into SimplyConvert's systems.

69.     The agreements with Bullock Legal and Schneider were lucrative for SimplyConvert and created a financial arrangement whereby any fees collected from other counsel for access to the Archetype Partners' proprietary claims data system would be credited against Bullock Legal's monthly fees.

70.     Upon information and belief, SimplyConvert has derived substantial direct financial benefit from its misappropriation of Archetype Partners' Trade Secrets, more than doubling its annual revenue following implementation of the VGA litigation platform customized by Schneider as evidenced by a call between Marc Stern of SimplyConvert, Schneider and potential funders in February of 2025.

71.     SimplyConvert knew or should have known that Schneider was still a Member of and working for Archetype Partners while he was working with them to design the VGA litigation platform, and that the information and methodologies he was sharing were proprietary to Archetype Partners.

72.     Upon information and belief, SimplyConvert continues to monetize Archetype Partners' Trade Secrets and Confidential Information through its ongoing contractual relationships with Bullock Legal, BlueKey Tek, and other law firms in the VGA litigation cases.

73.     In connection with their efforts to misappropriate Archetype Partners' Trade Secrets and Confidential Information, the Defendants also formed a conspiracy consisting of Schneider, Bullock Legal, BlueKey Tek, and SimplyConvert for the purpose of enriching themselves at the expense of Archetype Partners.

74.     Upon information and belief, in November 2024, Bullock Legal executed a term sheet with Calumet Capital for $20 million dollars using Archetype Partners' Trade Secrets and Confidential Information. Multiple term sheets were sent to Bullock Legal using Archetype Partners' intellectual property, totaling over $100 million, ultimately resulting in Bullock Legal signing with Calumet Capital.

75.     Bullock Legal and Schneider failed to inform Archetype Partners regarding the use of its trade secrets and confidential information, and upon information and belief, purposefully did not inform Archetype Partners pursuant to Defendants scheme to defraud and steal from Archetype Partners. Additionally, Bullock Legal did not compensate Archetype Partners for the use and monetization of the Archetype Partners' Trade Secrets and Confidential Information.

76.     In January 2025, Schneider and Bullock Legal continue working together to secure funding for VGA Cases for Bullock Legal as well as other law firms (some of whom were customers of Archetype Partners) and solicit investor and funders that were affiliates of Archetype Partners to see if they would lend to law firms on VGA Cases. of Archetype Partners) and solicit investor and funders that were affiliates of Archetype Partners to see if they would lend to law firms on VGA Cases.

77.     On January 7, 2025, the relationships between Bullock Legal, SimplyConvert, and BlueKey Tek were formalized through the "**Video Game Addiction Data Hosting and Claimant Workup Services Agreement**" signed by Tina Bullock and Jessie Hoerman. The agreement specifically authorized BlueKey Tek as a subcontractor/partner for data acquisition and verification services, stating that "SimplyConvert may only share data acquired under this Agreement as necessary to fulfill its obligations under this Agreement, which includes partners such as BlueKey Tek." This agreement effectively locked in SimplyConvert and BlueKey Tek as the exclusive providers of these services for Bullock Legal's VGA cases—using Archetype

Partners' Trade Secrets and Confidential Information. This comprehensive agreement connected Defendants to SimplyConvert, and BlueKey Tek into a single, coordinated conspiracy for exploiting Archetype Partners' Trade Secrets and Confidential Information.

78.    In January 2025, Schneider also begins providing underwriting services to SimplyConvert for the purpose of raising capital for the VGA Cases and for Bullock Legal in direct competition with Archetype Partners.

79.    Additionally, in January 2025 and beyond, Schneider continued to use his Archetype Partners' computer, which contained significant amounts of company records, trade secrets, and confidential business information.

80.    Despite the requests to return the computer, Schneider refuses to surrender the computer and continues to use and deprive Archetype Partners from its rightful and lawful possession of the computer.

81.    Moreover, pursuant to the Defendants' scheme, Bullock Legal encouraged Schneider to retain the computer and has jointly used the information contained on the computer and received information contained on the computer.

82.    Upon information and belief, Schneider, with the help of Bullock Legal has been soliciting, both directly and indirectly, Archetype Partners' customers and influencing the customers to use other litigation funding sources not affiliated with Archetype Partners and diverting business opportunities elsewhere.

83.    Through their coordinated activities, Defendants have caused Archetype Partners damage in Nevada in excess of $100 Million. This consists of:

> a.    Direct damages to Archetype Partners' claims business and litigation finance activities, including lost marketing and lead generation revenue (on a per lead

generated basis), claims workup revenue (on a per claim generated basis), and lost origination fees for each verified deal.

b.  Lost profits based upon the value of corporate opportunities that belonged to Archetype Partners that were usurped and diverted by Defendants.

c.  Financial harm by Defendants' improper solicitation and disruption of Archetype Partner's contracts and client/vendor relationships.

d.  Consequential and punitive damages, where appropriate.

## COUNT I
### *(Breach of Fiduciary Duty – Schneider)*

84.    Archetype Partners incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

85.    Pursuant to the Operating Agreement, Incident Response Plan, Information Security Policy & Data Privacy Program, and other contractual protections that expressly prescribe fiduciary duties, Schneider owed Archetype Partners fiduciary duties, including duties of utmost good faith and loyalty, confidentiality, and non-use of Archetype Partners' Trade Secrets and Confidential Information, all of which Schneider was obligated to uphold.

86.    The fiduciary duty of utmost good faith and loyalty is breached by engaging in self-dealing, pursuing for his own benefit an opportunity that would have been valuable and germane to Archetype Partners' business without first having offered that opportunity to Archetype Partners, intentionally harming Archetype Partners, intentionally benefiting himself to the detriment of Archetype Partners, displaying an intentional dereliction of duty or a conscious disregard for his responsibilities, or taking some similar action.

87.    Moreover, the fiduciary duty of utmost good faith and loyalty obliged Schneider to preserve and enhance the property and earning power of Archetype Partners, even if the interests of the company are in conflict with his personal interests.

88.     As set forth above, Schneider breached his fiduciary duties by brazenly elevating his personal interests above the interests of Archetype Partners, usurping and diverting opportunities that belonged to Archetype Partners and by acting in bad faith. He entered into the Schneider/Bullock JVA under false pretenses and pursued opportunities jointly. Schneider harmed Archetype Partners on his way out of Archetype Partners, wrongfully disclosing Archetype Partners' Trade Secrets and Confidential Information, wrongfully retaining company information and property that he used for his own personal gain.

89.     Schneider used is position of power and authority within Archetype Partners to gain access to trade secrets and confidential information and new business opportunities, and taken those opportunities for himself (and for the benefit of Bullock Legal, BlueKey Tek, and SimplyConvert) without the agreement or approval of Archetype Partners and without paying Archetype Partners at all for any of the opportunities and trade secrets taken.

90.     As set forth herein, Schneider acted in bad faith by devising and carrying out his scheme to defraud and steal from Archetype Partners.

91.     As a direct and proximate cause of Schneider's many breaches of his fiduciary duties, Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

## COUNT II

### *(Aiding and Abetting Breach of Fiduciary Duty – Bullock Legal)*

92.     Archetype Partners incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

93.     Bullock Legal is a potential client of Archetype Partners, entered into the Bullock Legal NDA, and, upon information and belief, was aware of Schneider's agreement to not disclose Archetype Partners' Trade Secrets and Confidential Information.

94.     Upon information and belief, Bullock Legal was aware that Archetype Partners took great care in protecting the Archetype Partners' Trade Secrets and Confidential Information.

95.     Bullock Legal was aware of Schneider's contractual relationship and obligations, and his role at Archetype Partners. As attorneys and sophisticated entities in the legal services industry understand the fiduciary duties owed by Schneider to Archetype Partners.

96.     Despite its knowledge of Schneider's fiduciary duties owed to Archetype Partners, Bullock Legal aided and abetted Schneider in breaching those duties by, among other things:

     a.  Entering the Schneider/Bullock JVA and jointly pursuing opportunities that belonged to Archetype Partners;

     b.  Upon information and belief, devising a plan with Schneider to defraud and steal from Archetype Partners;

     c.  Encouraging and causing Schneider to disclose Archetype Partners' Trade Secrets and Confidential Information to Bullock Legal and other third parties, even uploading the information directly to third parties;

     d.  Obtaining litigation funding and entering term sheets to receive litigation funding using Archetype Partners' Trade Secrets and Confidential Information that would not have otherwise been obtained without the Archetype Partners' Trade Secrets and Confidential Information and Schneider assisting;

e.   Entering into the Video Game Addiction Data Hosting and Claimant Workup Services Agreement and creating an exclusive business structure that deliberately excluded Archetype Partners from the VGA litigation market; and,

f.   Soliciting Archetype Partners actual or potential customers and investors.

97.    Bullock Legal, along with Schneider, carried out its actions and omissions purposefully, with malice, and with the intent to injure Archetype Partners.

98.    The actions of Bullock Legal procured Schneider's breaches of his fiduciary duties.

99.    As a direct and proximate cause of Bullock Legal's actions, Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

100.    Because the actions of Bullock Legal, as detailed herein and proven at trial, were willful and malicious, and/or manifested a knowing and reckless disregard and indifference toward the rights of Archetype Partners, punitive damages are appropriate and will be sought at trial.

## COUNT III
### *(Breach of Contract - Schneider)*

101.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    The Operating Agreement, including the confidentiality, non-disclosure, non-compete, and non-solicitation provisions, are valid and enforceable contracts between Schneider and Archetype Partners.

103.    Archetype Partners performed all of its obligations under the Operating Agreement.

104. As detailed herein, Schneider breached the Operating Agreement by, among other things:

    a. Wrongfully disclosing Archetype Partners' Trade Secrets and Confidential Information to Bullock Legal and other third parties;

    b. Failing to return Archetype Partners' Trade Secrets and Confidential Information;

    c. Failing to return Archetype Partners' property, including the computer Schneider took when he left the company and refused to return;

    d. Entering the Schneider/Bullock JVA;

    e. Assisting Bullock Legal in obtaining tens of millions of dollars of litigation funding using Archetype Partners' Trade Secrets and Confidential Information;

    f. Voluntarily withdrawing from the company;

    g. Soliciting Archetype Partners actual or potential customers and investors;

    h. Competing with Archetype Partners through his own business and through the Schneider/Bullock JVA;

    i. Facilitating and designing the Video Game Addiction Data Hosting and Claimant Workup Services Agreement and creating an exclusive business structure that deliberately excluded Archetype Partners from the VGA litigation market; and

    j. Usurping or diverting business opportunities that belonged to Archetype Partners.

(Collectively "**Schneider's Breaches of the Agreements**".)

105.    Upon information and belief, Archetype Partners Trade Secrets and Confidential Information taken by Schneider are currently being used to unlawfully and wrongfully compete with Archetype Partners for Schneider's and Bullock Legal's economic benefit and to Archetype Partners detriment.

106.    There is no plausible interpretation of the Settlement Counsel Activities under the Schneider/Bullock JVA where Schneider would be authorized to disclose the Archetype Partners' Trade Secrets and Confidential Information.

107.    Schneider's actions have damaged Archetype Partners in at amount to be proven at trial, but believed to be in excess of $100 Million.

108.    At all material times, Schneider's Breaches of the Agreements and actions described herein have caused and continue to cause irreparable injury to Archetype Partners, for which Archetype Partners has no adequate remedy at law and will continue to suffer injury unless enjoined.

109.    Archetype Partners is entitled to injunctive relief against Schneider to prevent further damage and harm and ordering the return and nonuse of Archetype Partners Trade Secrets and Confidential Information and computer.

110.    Archetype Partners is entitled to receive its reasonable attorney fees and costs incurred in enforcing the Operating Agreement.

## COUNT IV
### *(Breach of Duty of Good Faith and Fair Dealing - Schneider)*

111.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

112.    The Operating Agreement includes an implied covenant of good faith and fair dealing.

113.    The implied covenant of good faith and fair dealing obligated Schneider to, among other things:

    a.    In good faith, safeguard Archetype Partners' Trade Secrets and Confidential Information;

    b.    In good faith, investigate any disclosure of Archetype Partners' Trade Secrets and Confidential Information and take reasonable steps to correct the improper disclosure;

    c.    In good faith, not attempt to frustrate the business relationships between Archetype Partners and its customers and potential customers and investors;

    d.    In good faith, refrain from any intentional conduct that would cause harm to Archetype Partners; and

    e.    In good faith, not actively attempt to conceal and avoid disclosure of improper disclosures, usurping corporate opportunities, and steal Archetype Partners property.

114.    Upon information and belief, Schneider repeatedly breached his duty of good faith and fair dealing with the acts and omissions set forth in this Complaint.

115.    As a direct and proximate cause of Schneider's many breaches of his duties of good faith and fair dealing, Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

### COUNT V
### *(Breach of Contract – Bullock Legal)*

116.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

117.    The Bullock Legal NDA, including the confidentiality and non-disclosure provisions, is a valid and enforceable contract between Bullock Legal and Archetype Partners.

118.    Archetype Partners performed all of its obligations under the Bullock Legal NDA.

119.    As detailed herein, Bullock Legal breached the Bullock Legal NDA, among other things:

        a.    Wrongfully disclosed Archetype Partners' Trade Secrets and Confidential Information to third parties;

        b.    Obtained tens of millions of dollars of litigation funding using Archetype Partners' Trade Secrets and Confidential Information;

        c.    Caused Schneider to disclose Archetype Partners' Trade Secrets and Confidential Information to third parties; and

        d.    Failed to inform Archetype Partners of the unauthorized use, storage, copying or disclosure of Confidential Information.

(Collectively "**Bullock Breaches of the NDA**".)

120.    Upon information and belief, Archetype Partners Trade Secrets and Confidential Information taken by Bullock Legal are currently being used to unlawfully and wrongfully compete with Archetype Partners for Bullock Legal economic benefit and to Archetype Partners detriment.

121.    There is no plausible interpretation of the Bullock Legal NDA where Bullock Legal would be authorized to use or disclose the Archetype Partners' Trade Secrets and Confidential Information.

122.    Bullock Legal's actions have damaged Archetype Partners in an amount to be proven at trial, but believed to be in excess of $100 Million.

123.    At all material times, Bullock Legal's Breaches of the NDA and actions described herein have caused and continue to cause irreparable injury to Archetype Partners,

for which Archetype Partners has no adequate remedy at law and will continue to suffer injury unless enjoined.

124. Archetype Partners is entitled to injunctive relief against Bullock Legal to prevent further damage and harm and ordering the return and nonuse of Archetype Partners Trade Secrets and Confidential Information and computer.

125. Archetype Partners is entitled to receive its reasonable attorney fees and costs incurred in enforcing the Bullock Legal NDA.

## COUNT VI
### *(Breach of Duty of Good Faith and Fair Dealing – Bullock Legal)*

126. Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

127. The Bullock Legal NDA includes an implied covenant of good faith and fair dealing.

128. The implied covenant of good faith and fair dealing obligated Bullock Legal to, among other things:

a. In good faith, safeguard Archetype Partners' Trade Secrets and Confidential Information;

b. In good faith, investigate any disclosure of Archetype Partners' Trade Secrets and Confidential Information and take reasonable steps to correct the improper disclosure;

c. In good faith, not attempt to frustrate the business relationships between Archetype Partners and its customers and potential customers and investors;

d. In good faith, refrain from any intentional conduct that would cause harm to Archetype Partners;

e.   In good faith, not encourage others to disclose Archetype Partners' Trade Secrets and Confidential Information; and

f.   In good faith, not actively attempt to conceal and avoid disclosure of improper disclosures, usurping corporate opportunities, and steal Archetype Partners property.

129.   Upon information and belief, Bullock Legal repeatedly breached its duty of good faith and fair dealing with the acts and omissions set forth in this Complaint.

130.   As a direct and proximate cause of Bullock Legal's many breaches of their duties of good faith and fair dealing, Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

## COUNT VII

### (Federal Theft of Trade Secrets (18 U.S.C. § 1836) - Defendants)

131.   Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

132.   As part of his ownership in Archetype Partners and his role at the company, Schneider had access to, knew of, and obtained possession of Archetype Partners' Trade Secrets and Confidential Information.

133.   Schneider kept some or all of Archetype Partners' Trade Secrets and Confidential Information on his computer and failed to return the computer, trade secrets and confidential information upon his voluntary withdrawal from the company.

134.   Bullock Legal was provided Archetype Partners' Trade Secrets and Confidential Information in connection with the Bullock Legal NDA. Bullock Legal knew the Archetype Partners' Trade Secrets and Confidential Information was shared pursuant to the Bullock Legal NDA.

135.    Additionally, Bullock Legal knew and wrongfully obtained Archetype Partners' Trade Secrets and Confidential Information through Schneider.

136.    Archetype Partners – not Defendants – developed, paid for, and owns Archetype Partners' Trade Secrets and Confidential Information.

137.    The misappropriated information constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3) because:

    a.  Archetype Partners derived independent economic value from the information not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information;

    b.  Archetype Partners took reasonable measures to keep the information secret; and,

    c.  The information was used in interstate commerce.

138.    Defendants knew the information wrongfully disclosed and taken by Schneider constituted Archetype Partners' Trade Secrets and Confidential Information.

139.    Defendants used improper means to acquire Archetype Partners' Trade Secrets and Confidential Information by devising and carrying out their plan to defraud and steal from Archetype Partners as set forth herein.

140.    Defendants have used and intend to continue using Archetype Partners' Trade Secrets and Confidential Information for their personal economic benefit to obtain millions of dollars in fees and litigation funding to the detriment of and without compensation to Archetype Partners.

141.    Defendants stole and misappropriated Archetype Partners' Trade Secrets and Confidential Information and intended to misappropriate Archetype Partners' Trade Secrets and Confidential Information.

142.    Defendants' theft and misappropriation of Archetype Partners' Trade Secrets and Confidential Information was, upon information and belief, conducted in a willful and malicious manner for an improper purpose.

143.    Defendants' theft and misappropriation of Archetype Partners' Trade Secrets and Confidential Information has directly and proximately damaged Archetype Partners and its business.

144.    Archetype Partners is therefore entitled to an award of actual damages in an amount to be proven at trial, but believed to be in excess of $100 Million.

145.    Because Defendants misappropriation of Archetype Partners' Trade Secrets and Confidential Information may have been conducted in a willful and malicious manner, Archetype Partners may also be entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) in an amount not to exceed two times the award of damages as well as its attorney fees under 18 U.S.C. § 1836(b)(3)(D).

146.    At all material times, the above-described actions have caused and continue to cause irreparable harm and injury to Archetype Partners, for which Archetype Partners has no adequate remedy at law, and will continue to suffer injury unless Defendants are enjoined.

147.    Archetype Partners is entitled to injunctive relief against Defendants to prevent further harm to Archetype Partners.

## COUNT VIII

### *(State Misappropriation of Trade Secrets (Nevada Code NRS § 600A.010 – Defendants)*

148.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

149.    For the same reasons set forth above in relation to Count VII, Federal Theft of Trade Secrets, Defendants have misappropriated Archetype Partners Trade Secrets and Confidential Information under Nevada law.

150.    Defendants misappropriated Archetype Partners' trade secrets as defined in NRS 600A.030(2) by:

  a.    Acquiring Archetype Partners' trade secrets through improper means, including breach of duties of confidentiality and the unauthorized taking of Archetype Partners' property;

  b.    Using and disclosing Archetype Partners' trade secrets without express or implied consent; and

  c.    Using and disclosing Archetype Partners' trade secrets while knowing or having reason to know that the trade secrets were acquired through improper means.

151.    Defendants' misappropriation of Archetype Partners' trade secrets has directly and proximately caused damage to Archetype Partners in an amount to be proven at trial, but is believed to be in excess of $100 Million.

152.    Because Defendants' misappropriation was willful and malicious, Archetype Partners is entitled to exemplary damages under NRS 600A.050(2) in an amount not exceeding twice the award for actual damages, as well as reasonable attorneys' fees under NRS 600A.060.

153.    Archetype Partners is entitled to injunctive relief against Defendants under NRS 600A.040 to prevent the actual or threatened misappropriation of its trade secrets.

154.    At all material times, the above-described actions have caused and continue to cause irreparable harm and injury to Archetype Partners, for which Archetype Partners has no adequate remedy at law and will continue to suffer injury unless Defendants are enjoined.

155.    Archetype Partners is entitled to injunctive relief against Defendants to prevent further harm to Archetype Partners.

### COUNT IX

### *(State Theft by Conversion – Defendants)*

156.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

157.    Archetype Partners has the right to immediate possession of its property including, but not limited to, Archetype Partners' Trade Secrets and Confidential Information, the computer wrongfully taken and retained, and the information and company records on the computer.

158.    Defendants have wrongfully retained and exerted control over Archetype Partners' Trade Secrets and Confidential Information, the computer, and the information and company records on the computer.

159.    Defendants' distinct actions of dominion are inconsistent with Archetype Partners' right to possess and control its property.

160.    Defendants have intentionally and unjustifiably interfered with and wrongfully exerted control over Archetype Partners' property.

161.    Archetype Partners has suffered damages resulting from Defendants' conversion and interference in an amount to be proven at trial, but is believed to be in excess of $100 Million.

162.    At all material times, the above-described actions have caused and continue to cause irreparable harm and injury to Archetype Partners, for which Archetype Partners has no adequate remedy at law, and will continue to suffer injury unless Defendants are enjoined.

163.    Archetype Partners is entitled to injunctive relief against Defendants to prevent further harm to Archetype Partners.

## COUNT X

### *(Conspiracy – Defendants)*

164.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

165.    Defendants devised a scheme to defraud and steal from Archetype Partners.

166.    Defendants had a meeting of the minds regarding the scheme to defraud and steal from Archetype Partners and worked in concert with each other to carry out the scheme. Defendants even entered a joint venture that carried out the scheme to defraud, including:

    a.    The Schneider/Bullock JVA executed on September 27, 2024;

    b.    The November 14, 2024 email of Bullock Legal granting contracting and negotiating authority to Schneider for purposes of negotiating the "Video Game Addiction Data Hosting and Claimant Workup Services Agreement" between Bullock Legal and SimplyConvert; and

    c.    The January 7, 2025 "Video Game Addiction Data Hosting and Claimant Workup Services Agreement" between Bullock Legal and SimplyConvert, which specifically integrated BlueKey Tek into the agreement by name as an authorized partner for data sharing. This comprehensive agreement created a formal business structure connecting Defendants in a unified enterprise designed to exploit Archetype's trade secrets and confidential information.

167.    As set forth above, the scheme to defraud and steal, as well as the breach of fiduciary duties, theft, and conversion, are wrongful and unlawful acts.

168.    As a direct and proximate cause of Defendants' actions, Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

## COUNT XI

### *(Intentional Interference with Economic Advantages and Prospective Relationship – Defendants)*

169.    Archetype Partners hereby incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

170.    As part of their scheme to defraud and steal from Archetype Partners, Defendants intentionally and wrongfully interfered with Archetype Partners actual and prospective contractual relationship with third parties, including but not limited to Calumet Capital, Contingency Capital, LLC, Kerberos Capital Management, LLC and numerous other customers and potential customers as well as Affiliates and potential Affiliates.

171.    Schneider knew of Archetype Partners' actual and prospective relationships and, upon information and belief, disclosed those relationships to Bullock Legal.

172.    Defendants actually contacted Archetype Partners' actual and potential customers and investors in efforts to obtain litigation funding, after stealing Archetype Partners' Trade Secrets and Confidential Information.

173.    Defendants, upon information and belief, stole and defrauded Archetype Partners with the intent to harm and injure the company and to damage Archetype Partners' existing relationships and potential relationships, including but not limited to, Calumet Capital Contingency Capital, LLC, Kerberos Capital Management, LLC and others.

174.    Defendants had no justification or privilege to cause the harm and prevent Archetype Partners from entering the relationships and did not using the wrongfully obtained and wrongfully disclosed trade secrets and confidential information.

175.    Defendants' actions have been and are the direct and proximate cause of harm and injury to Archetype Partners.

176.    Archetype Partners has been damaged in an amount to be proven at trial, but believed to be in excess of $100 Million.

## PRAYER FOR RELIEF

WHEREFORE, Archetype Partners pray for judgment against Defendants as follows:

1.    For injunctive relief restraining and enjoining Defendants as set forth herein;

2.    For an order requiring the return of Archetype Partners' Trade Secrets and Confidential Information, computer, and other company property;

3.    For monetary damages, including exemplary damages and punitive damages as allowed (and as identified above), exclusive of interest, fees, and costs, in the precise amount to be proven at trial, but believed to be in excess of $100 Million;

4.    For pre- and post- judgment interest at the maximum rate allowed by law for contract;

5.    For reasonable attorney fees and costs as allowed by statute or contract; and

6.    For such other relief as the Court deems just and equitable.

## JURY DEMAND

Archetype Partners hereby demand a trial by jury on all claims or issues so triable. The jury demand fee has previously been paid to the Court.

DATED this 8th day of September, 2025.

/s/ Kevin N. Anderson
Kevin N. Anderson, Esq.
Nevada State Bar No. 4512
**FABIAN VANCOTT**
2275 Corporate Cir., Suite 220
Henderson, NV 89074
Telephone:    (702) 233-4444

*Attorneys for Plaintiff*