D. CHRIS ALBRIGHT
Nevada Bar No. 004904
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rando Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702)384-7111/Fax: (702)384-0605
dca@albrigihtstoddard.com

MAZIN A. SBAITI
*Pro Hac Vice* forthcoming
Texas Bar No. 24058096
KEVIN N. COLQUITT
*Pro Hac Vice* forthcoming
Texas Bar No. 24072047
**SBAITI & COMPANY PLLC**
3102 Maple Avenue, Suite 400
Dallas, Texas 75201
Tel: (214)432-2899
Fax: (214)853-4367
mas@sbaitilaw.com
knc@sbaitilaw.com
***Attorneys for Defendant***
***Andrew Schneider***

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ARCHETYPE CAPITAL PARTNERS, LLC, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>BULLOCK LEGAL GROUP, LLC, a Georgia limited liability company, and ANDREW SCHNEIDER, an individual residing in Texas,<br><br>        Defendants. | **CASE NO. 2:25-CV-01686-JCM-BNW**<br><br>**DECLARATION OF ANDREW D. SCHNEIDER** |

1

**HARRIS COUNTY §**
                    **§**
**STATE OF TEXAS §**

1.     I, the undersigned, hereby declare under penalty of perjury that the following testimony is made within my personal knowledge and is true and correct.

2.     My name is Andrew Schneider. I am over the age of 18, and I am competent to give the testimony I am giving herein.

3.     I am a lawyer licensed to practice law in New Jersey and in good standing, and I currently am practicing law in the mass torts space working as settlement counsel.

4.     I was bought out of Archetype Consulting Group in 2023. It owed me money for unpaid royalties. Archetype Consulting has nothing to do with this case.

5.     At Archetype, we were mainly engaged in purchasing employee retention credits. We never funded a single mass tort litigation. In the four years that Archetype existed, Archetype brokered a single litigation deal which was funded by Legalist, and for which Archetype was paid $40,000 as a broker fee.

6.     I resigned my membership in Archetype Capital Partners, LLC ("Archetype") in December 2024 (Exhibit 58). I kept my laptop because it has my own legal work product on it. If there were confidential Archetype trade secrets on there and if those were specifically identified, I would gladly delete them.

7.     Archetype is not a law firm. It cannot and does not practice law. It cannot share legal fees, represent clients, or otherwise participate in my legal representation of clients.

8.     While I do not here admit to signing Exhibit 1, I am a Member of Archetype and Mayer is the sole Manager according to § 5.1, as reflected in Exhibit 1. As a Member, I owe no duty of loyalty to Archetype, and I am not an agent of Archetype (§ 5.1.4.1). To my knowledge, nothing in Exhibit 1 makes the work product I created the property of Archetype—and in fact, § 5.4.1 expressly states the opposite and states that I am free to pursue my own ventures.[1]

---

[1] Exhibit 1, § 5.4.1 states that: "[N]othing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and the Member shall not be accountable to the Company or to any Member with respect to that business or activity. The organization of the Company shall be without prejudice to their respective rights (or the rights of their respective

9. I reviewed the exhibits that purport to be "trade secrets" or confidential information belonging to the Company. In the 82 Exhibits filed with the TRO, I see no evidence of confidential, proprietary or trade secret information. Nor did I use any such information or misappropriate it, as I explain below:

10. The information on Exhibit 2 (Incident Response Plan) was based upon things I had known about prior to joining Archetype and is standard response information and protocols. It mainly applies to data breaches where third-party data that we would have controlled is compromised or breached, of which there is no evidence  in this case. I do not understand how this exhibit would have anything to do with a trade secret or confidential information breach. I did not share it with anyone in any event.

11. Exhibits 2, 3, 5-11, 13-18,, 23, 28, 32-34, 39, 43, 55-57, 59-60, and 62, contain and reflect information that I compiled into various coherent papers (as one can see). However, neither the information nor the compilation itself is non-public or not available to anyone in mass torts if they were to simply ask around or simply search the relevant websites (like that of the MDL website, public science forums, and/or other such information sources). There was no scientific investment by Archetype or development into any of the information reflected about mass torts, values, strategies, or insights. Many of these were begun by me prior to my association with Archetype. Archetype invested no funds in developing, collating, organizing, or obtaining this information. And therefore, nothing in these exhibits is specifically proprietary for Archetype. Archetype never used it and therefore never derived any revenue or money from it, and its value to Archetype is not dependent on its being kept secret.

12. Exhibit 4 and 8 represent a high-level pitch for a business Archetype never engaged in. I did not divert this opportunity. Archetype never used it and therefore never derived any revenue or money from it, and its value to archetype is not dependent on its being kept

Affiliates) to maintain, expand or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates. The Company and the Members acknowledge and agree that each of the Members is free to, and may continue, to engage, invest and participate in, and otherwise conduct, other businesses and other businesses, both currently existing and in the future."

secret.

13.     Exhibit 12 is the reflection of a template I created. It is generic and useful, but not proprietary. Every law firm has one. Archetype never used it and therefore never derived any revenue or money from it, and its value to Archetype is not dependent on it being kept secret.

14.     After I left Archetype in December 2024, I worked with Bullock Law. By then, Bullock Law had already engaged Calumet Capital to broker a litigation finance opportunity. Archetype was not hired (nor was I) for that purpose. Exhibit 18 reflects a memo I prepared for them based upon internal documents. It is not and was never the property of Archetype. Bullock Law was never a client of Archetype. I did not use any Archetype confidential information, and have no reason to believe that any such information was used or caused Bullock Law to get funding that it otherwise would not have received. I did not receive or stand to receive any compensation for the funding arrangement between Bullock and Calumet.

15.     While we did engage with Bullock Law in May 2023 (as reflected in Exhibits 19 and 20), we did not provide an opportunity for funding (*see* Exhibit 21, for example) due to some of the hurdles I identified. This may explain why Bullock went and engaged with Calumet Capital (Exhibits 53-55).  I did end up engaging with Bullock in my capacity as an attorney as a settlement counsel. There are several exhibits reflecting that work, including Exhibits 38, 44, 45, 46, 47, 48[2], 50. Doug Mayer was well aware of this. He was not allowed to participate because he is not a lawyer, and this aspect of my work fell outside of the work of Archetype (*see* Exhibits 22 and 24-26). Mr. Mayer told me that he thought it was good for me to go in this direction to make money because Archetype had run out of money and had not paid me since May 2024.

16.     Exhibits 30-31 are emails with a co-counsel, the Law Offices of Nhan Nguyen. I had known him for over seven years. It was never a funding deal. No funding deal was ever consummated between me (or any entity I own or control) and the Law Offices of Nhan Nguyen.

17.     No deal was ever done with Western Alliance Bank. I communicated with them in 2024 on behalf of Archetype to try and secure lines of revenue to potentially fund future Archetype customers. Exhibit 32 contains no confidential information or proprietary information

---

[2] Alan Braken works with Bullock Law in the video game addiction litigation.

as defined in the Complaint. Exhibit 42 reflects attempts to get qualified settlement funds put together for litigation clients after I started practicing law again.

18.    My communications with Paul Crouch (e.g., Exhibits 35, 40, 41, 49) were made in my capacity as a lawyer and not in my capacity as a Member of Archetype.

19.    My legal work product reflected in Exhibit 38 was made in my capacity as a lawyer.

20.    Archetype cannot claim any proprietary right in any information or work product that I generated as a lawyer working on behalf of clients with co-counsel law firms. Such work product was never intended to be part of Archetype's business or platform. Example exhibits include Exhibits 54-60, 62, 64, 67-74, and 76-80.

21.    Exhibits 67-68 and 80-82 are nothing internal to Archetype.

22.    I resigned from Archetype because Doug Mayer wanted to commit extortion against Contingency Capital, using false allegations of stealing trade secrets. These allegations are set forth in my email identified as Exhibit 58. I refused to risk my bar license. but Mr. Mayer has no problem using false allegations and told me to "shut the fuck up" when I tried to not be a party to false allegations.

23.    Exhibit 75 is my personal financial statement and is irrelevant.

24.    The reason Archetype has so many of my documents from my work as a lawyer is plainly because Archetype and Mr. Mayer used TeraMind® to monitor what was on my laptop. When I resigned from Archetype  I no longer consented to TeraMind® being on my laptop, and therefore any access therefrom was unauthorized and unlawful.

I declare under penalty of perjury that the foregoing is true and correct and is within my personal knowledge.

Date:  October 29, 2025                    */s/ Andrew D. Schneider*
                                            Andrew D. Schneider