Kevin N. Anderson
Nevada State Bar No. 4512
FABIAN VANCOTT
2275 Corporate Cir., Suite 220
Henderson, NV 89074
Telephone:     (702) 233-4444
kanderson@fabianvancott.com

Hilary R. Adkins (*pro hac vice forthcoming*)
Utah State Bar No. 18296
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, UT 84111
Telephone: (801) 531-8900
hadkins@fabianvancott.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| ARCHETYPE CAPITAL PARTNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SCHNEIDER, an individual residing in Texas,<br><br>Defendants. | Case No. 2:25-CV-01686-GMN-BNW<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANDREW SCHNEIDER'S 12(b)(6) MOTION TO DISMISS** |
|---|---|

Plaintiff Archetype Capital Partners, LLC ("**Archetype**"), by and through undersigned counsel, hereby submits this Opposition to Defendant Andrew Schneider's ("**Schneider**") Motion to Dismiss (ECF No. 39) ("**Motion**") under Rule 12(b)(6). This Opposition is supported by the attached memorandum of points and authorities, the pleadings and papers on file herein, and any other evidence and oral argument this Court may entertain at the hearing of the Motion.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Schneider's Motion asks this Court to do what Rule 12(b)(6) does not permit: ignore well-pleaded allegations, resolve factual disputes, and adopt Schneider's preferred narrative over the Complaint's. The Motion is built on rhetoric, not law. Schneider demands a level of factual specificity that far exceeds what Rule 8 or *Twombly/Iqbal* require, repeatedly asserts legal conclusions without citing supporting authority, and attempts to reframe a detailed, document-supported Complaint as a "business divorce" rather than address the specific misconduct alleged. That is not the standard on a motion to dismiss.

Archetype has plausibly alleged more than enough to state its claims. The Complaint identifies protectable trade secrets, explains how they derive independent economic value, alleges exactly how Schneider acquired and used them improperly while still a co-founder and member, and details his coordinated efforts with Bullock Legal Group ("**BLG**") to divert opportunities, misappropriate Archetype's proprietary systems, and conceal the misconduct. Schneider cannot avoid liability by re-characterizing those allegations or by recasting contested factual issues as pleading defects.

Where Schneider's arguments become specific, they fail. He asserts that no fiduciary duty existed despite the Operating Agreement's ("**OA**") express confidentiality, loyalty, and non-compete obligations. He claims no breach occurred while ignoring the Complaint's detailed allegations of unauthorized disclosure, competition, and misuse of Archetype's information.[1] He argues preemption and the economic loss doctrine without acknowledging Rule 8's allowance for alternative theories or the clear line of cases holding that preemption questions are premature at

---

[1] Schneider again asserts that the alleged trade secrets "would constitute [his] own *legal* work product if they had been deployed." ECF No. 39, at 1:8–10. But the Court has already rejected this characterization, expressly finding that "the record supports the finding that Schneider performed financial work, not legal work, and any confidential information was the property of Archetype." ECF No. 48, at 17:8–10.

2

the pleading stage. Finally, his challenge to Archetype's tort claims relies on a version of the facts that contradicts the Complaint and cannot be credited now.

Schneider wants the Court to decide disputed facts, weigh evidence, and accept his story. The Federal Rules do not allow that. Taking the allegations as true, as required, Archetype states multiple viable causes of action. Schneider cites no authority compelling dismissal of any of them. His Motion should be denied in its entirety.

## II. ARGUMENT

### A. SCHNEIDER'S ARGUMENT FOR DISMISSAL UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FAILS BECAUSE ARCHETYPE SUFFICIENTLY PLEADS ALL OF ITS CAUSES OF ACTIONS.

Rule 8(a) of the Federal Rules of Civil Procedure "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (internal citations omitted). Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added). Further, on a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the complaint, construe the complaint in the light most favorable to Archetype, and draw all reasonable inferences in Archetype's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Importantly, dismissal is not appropriate unless, "tak[ing] all material allegations as true and constru[ing] them in the light most favorable to the plaintiff," the complaint "does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Switch Ltd. v. Fairfax*, 2018 WL 4181626, at *2 (D. Nev. Aug. 30, 2018). In other words, a complaint need not contain a complete recitation of all facts, as Schneider appears to be requesting. Regardless, Archetype's Complaint is a well-pleaded complaint that contains "sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Any additional facts or evidence will be unveiled during discovery and are not necessary at this time. Accordingly, Schneider's Motion should be denied.

### 1. Schneider Did Owe Fiduciary Duties to Archetype.

Under Nevada law, a claim for breach of fiduciary duty requires: (1) the existence of a fiduciary duty; (2) breach; and (3) resulting damages. *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). Although NRS Chapter 86 does not automatically impose fiduciary duties between LLC members, Nevada recognizes such duties where the members contract for them. *Israyelyan v. Chavez*, 466 P.3d 939, 136 Nev. 832, 4 (2020) (finding no fiduciary duties where there was no operating agreement or any valid agreement prescribing duties); *Muney v. Arnould*, 524 P.3d 491, *4 (Nev. 2023). A fiduciary relationship exists when a party is "bound to act for the benefit of the other," imposing "a duty of utmost good faith." *HP Tuners, LLC v. Cannata*, 2022 WL 562625, at *6 (D. Nev. Feb. 24, 2022) (quoting *Giles v. GMAC*, 494 F.3d 865, 880–81 (9th Cir. 2007)). Such duties may be created by "express language in the operating agreement or through language that has a similar effect." *Id.*

In *HP Tuners, LLC*, the court affirmed the lower court's conclusion that "the Operating Agreement established a fiduciary duty among the HPT members to, at minimum, protect its intellectual property…." *Id*. The court explained that "although Nevada does not impose a fiduciary duty on co-members of an LLC, § 4.1 of the Operating Agreement imposed a fiduciary duty on Cannata because each member of HPT was required to assist the company 'in every way' to enforce its rights as it relates to its IP." *Id.*, at *7. The court further noted that "the evidence [did] demonstrate that Cannata did share software and technology created and used by HPT with Sykes-Bonnett which could constitute breach of his fiduciary duty." *Id.*

Similarly, here, the OA expressly imposed duties on Schneider. The Complaint alleges that Section 5.4, titled "Duties of Parties", and Section 10 restrict members' ability to engage in competing activities and require duties of loyalty, good faith, confidentiality, and non-use of Archetype's trade secrets. *See* ECF No. 1, at ¶ 27; 85. It further alleges Schneider allegedly emailed Archetype's confidential and trade-secret information from Archetype's systems to BLG, then pursued an independent business relationship using those materials. *Id.*, at ¶¶ 54; 56; 58; 59; 63-64, which easily constitutes a breach of fiduciary duty. *See HP Tuners, LLC*, 2022 WL 562625, at *7.

Archetype's contentions are sufficient at this stage in the proceedings. *See* Fed.R.Civ.P. 8(a)(2) (requiring only "[a] short and plain statement of the claim showing that the pleader is entitled to relief"); *MetLife Bank,* 2010 WL 2541729, at *5–6 (denying motion to dismiss claim for breach of fiduciary duty based on allegations that defendants left employment with plaintiff to join competitor). Schneider owed fiduciary duties as member and party to the OA; he breached those duties by misusing and disclosing Archetype's confidential information; and Archetype suffered resulting harm. Schneider's Motion to dismiss this claim should therefore be denied.

2. **Archetype Adequately Pleads its Contractual Claims.**

A claim for breach of contract must allege "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 408 (1865). Under Nevada law, "[a] breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 734 P.2d 1238, 1240 (Nev. 1987); *see also Kurian v. Snaps Holding Co.*, No. 2:19-cv-01757-GMN-EJY, 2021 U.S. Dist. LEXIS 184183, at *14 (D. Nev. Sep. 27, 2021). At the pleading stage, Archetype need only plausibly allege the existence of a contract, the duties imposed by that

contract, breach, and resulting harm. *See Fisher v. State ex rel. Dep't of Agric.*, No. 3:15-cv-0439-LRH-WGC, 2015 WL 7428560, at *2 (D. Nev. Nov. 20, 2015).

The allegations in the Complaint, which must be accepted as true and viewed in light most favorable to Archetype at the Rule 12(b)(6) stage, readily satisfy each element of a breach of contract claim. Schneider's belief that Archetype did not plead breach of each provision of the OA is irrelevant at this stage. The issue on a Rule 12(b)(6) motion is not whether Schneider agrees with the alleged breaches, but whether the Complaint plausibly alleges a breach of the OA sufficient to give notice of the claim. It does. The Complaint alleges that Schneider entered into and signed the OA, establishing the existence of a valid and enforceable contract. ECF No. 1, at ¶¶ 17; 26-29; 102. It further alleges that Schneider breached the OA by violating its confidentiality, non-compete, non-solicitation, and non-disclosure obligations. *Id.*, at ¶¶ 42; 56-59; 63-64; 66-68; 70; 75; 78-80; 104. And Archetype specifically pleads the resulting damages flowing from those breaches. *Id.*, at ¶¶ 65; 75; 77; 83; 107.[2] These allegations more than satisfy the elements of breach of contract.

Moreover, Schneider's argument that any disclosure occurred with Doug Mayer's ("**Mayer**") prior consent mischaracterizes the pleadings. The Complaint makes clear that Mayer approved only Schneider's limited role as "settlement counsel"—that is, to "work with Tina in the settlement room." ECF No., at ¶ 12. Nothing in that approval authorized Schneider to disclose Archetype's trade secrets or confidential information to third parties. The allegations here plainly state otherwise: Schneider transmitted Archetype's proprietary information to BLG outside the bounds of any authorized purpose, and in violation of his contractual obligations. Accordingly, Schneider's Rule 12(b)(6) challenges to Counts Five and Six must be denied.

---

[2] For purposes of the preliminary injunction, the Court has already determined that Archetype is likely to succeed on its breach of contract claim against Schneider. *See* ECF No. 48, at pp.21-22. That prior finding further underscores that dismissal at the pleading stage is unwarranted.

### 3. Archetype Adequately Pleads Breach of Duty of Good Faith and Fair Dealing.

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *A.C. Shaw Constr. v. Washoe Cty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)). A party breaches the covenant where it "literally complie[s]" with the contract's terms but "deliberately countervenes the intention and spirit of the contract.'" *Hurtado v. Suprenant*, 2024 WL 2959270, at *2, 2:23-cv-01433-GMN-EJY (Slip Copy) (quoting *Hilton Hotels Corp.*, 808 P.2d at 923–24.).

Archetype pleads each required element. First, unlike *Hurtado*—where the court dismissed because no contract existed—here a valid OA governs Schneider's duties. ECF No. 1, at ¶ 17; 26-29; 102. Second, Archetype alleges Schneider acted in a manner fundamentally inconsistent with the OA's purpose: while still a member, owing duties of loyalty, confidentiality, and non-competition, Schneider secretly diverted opportunities, misused Archetype's trade secrets, and undermined Archetype's business for his own gain. *Id.*, at ¶ 113. These allegations easily constitute conduct "unfaithful to the purpose" of the OA.

Third, Archetype alleges its justified expectations were denied. The OA required members, including Schneider, to protect Archetype's confidential information, refrain from competing, act in Archetype's best interest, and enforce its intellectual property rights. Archetype reasonably expected Schneider to honor those obligations as a member. Instead, Schneider exploited his membership status to access Archetype's proprietary materials and then used them to advance his

own competing venture. That is precisely the type of conduct Nevada recognizes as a breach of the implied covenant.

Schneider argues Archetype relies on the same allegations for the breach-of-contract claim and the covenant claim. Not so. The Complaint separately pleads the factual bases for each: Paragraph 104 identifies Schneider's specific contractual breaches, while Paragraph 113 identifies how Schneider violated the covenant's broader obligations of loyalty, fairness, and adherence to the contract's purpose. *See* ECF No. 1, at ¶¶ 104; 113. That distinction is more than sufficient at the pleading stage.

Because Archetype alleges a valid contract, Schneider's deliberate conduct that contravened the contract's purpose, and resulting injury, the claim for breach of the implied covenant of good faith and fair dealing is properly pled. Schneider's Motion to dismiss this claim should be denied.

**4. <u>Archetype Adequately Pleads Trade Secret Misappropriation.</u>**

Schneider insists that Archetype's trade-secret descriptions are "devoid of allegations that plausibly support the notion that the information amounts to a 'trade secret.'" ECF No. 39, at 11:3-5. This is untrue. At the pleading stage, a plaintiff "need not spell out the details of the trade secret." *Banq, Inc. v. Purcell*, 2025 WL 2163327, at *2 (D. Nev. July 29, 2025); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (sufficient-particularity issues arise "in the battleground of discovery"). Premature dismissal would "short-circuit that iterative process." *Id.*

Rule 8 does not require a plaintiff to publicly reveal the "metes and bounds" of its trade secrets, which would force plaintiffs to file complaints under seal simply to survive dismissal. *Banq, Inc.*, 2025 WL 2163327, at *2 (citing *Philips N. Am. LLC v. Advanced Imaging Servs., Inc.*, 2021 WL 5054395, at *3 (E.D. Cal. Nov. 1, 2021); *T-Mobile USA, Inc. v. Huawei Device USA,*

1  *Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) (("[A] plaintiff should not be compelled to divulge with specificity all of its possible trade secrets . . . in order to proceed to discovery."); *Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, No. 2:24-cv-00382-GMN-MDC, 2024 WL 3104806, at *4 (D. Nev. June 24, 2024). All that is required is that Archetype "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

Here, the Complaint identifies specific, proprietary materials developed through years of specialized work, including litigation overviews, intake outlines, and settlement frameworks. ECF No. 1, at ¶¶ 23-24; *see Marina Dist. Dev. Co., LLC v. AC Ocean Walk, LLC*, No. 2:20-cv-01592-GMN-BNW, 2020 WL 5502160, at *3 (D. Nev. Sept. 10, 2020) (J. Navarro) ("given the broad definition of trade secret, the Court does not find Plaintiff's failure to identify its trade secrets with particularity is fatal to Plaintiff's claim"); *Switch Ltd.*, 2018 WL 4181626, at *3 ("[t]o the extent Defendants argue that Plaintiff must allege its misappropriation claims with greater particularity, the Court disagrees."). Courts consistently hold that such compilations, data integrations, and analytical models qualify as protectable trade secrets. *See United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) (citing Restatement (Third) of Unfair Competition § 39 cmt. f (1995)) ("The fact that some or all of the components of a trade secret are well known does not preclude protection for a secret combination, compilation, or integration of the individual elements."); *Eco-Separator Co., Inc. v. Shell Canada Ltd.*, 872 F.2d 427, 1989 WL 37236, *2 (9th Cir. 1989) (holding that "[a] trade secret may consist of a novel combination of familiar principles to produce a new result, or of a familiar principle applied to a new use"). Archetype's allegations provide Schneider a "roadmap to distill what information may be a trade secret and what may not."

*Banq,* 2025 WL 2163327, at *3 (citing *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151-52 (S.D. Cal. 2022)); *see* ECF No. 1, at ¶¶ 23-24. "While a failure to specifically identify the trade secrets may be a problem later in the case, 'they are an insufficient reason to warrant dismissal at the pleading stage.'" *Aristocrat Techs., Inc.*, 2024 WL 3104806, at *5 (citing *FSP, Inc. v. MJM Fantasy Sports LLC*, No. 2:11-cv-00747-RLH, 2011 WL 6256969, at *2 (D. Nev. Dec. 14, 2011). If Schneider wants "additional detail regarding the trade secrets at issue, the discovery process will lend clarity." *Id.; InteliClear, LLC, Inc.*, 978 F.3d at 662 ("discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification").

Further, Schneider, who helped create Archetype's proprietary systems as a co-founder and member, cannot plausibly claim he "does not know" what the trade secrets are. The Court has already held that Archetype's

> trade secrets consist of a comprehensive suite of proprietary systems, methodologies, and intellectual property for various mass tort litigations, such as VGA, RealPage, PFAS, and Mastercard/Visa, that it developed at significant expense and effort, including but not limited to: settlement frameworks and valuation models; proprietary claim qualification criteria and intake protocols; case inventory and growth analytics; claims processing infrastructure and workflow systems; funding models and requirements; cross-litigation overlap discovery methodologies; confidential databases and analytical tools; and strategic business relationships and vendor systems,…is sufficient to put Schneider on notice of Archetype's alleged trade secrets.

ECF No. 49, at 15:9-18. The Complaint alleges each of these categories. *See* ECF No. 1, at ¶ 23. The Court also found that the record shows "significant financial investment" in developing these trade secrets, and that they "derive independent economic value from not being generally known." ECF No. 49, at 16:4-6. The very evidence the Court relied upon is reflected in Paragraph 24 of the Complaint. ECF No. 1, at ¶ 24; *compare with* ECF No., 10, at ¶ 14.

In sum, Schneider's argument that he lacks notice of the trade secrets fails as a matter of law and fact. The Court has already recognized that Archetype's alleged trade secrets are

sufficiently defined, are expressly pled in the Complaint, and derive independent economic value—more than satisfying the pleading requirements at this stage.

5. **<u>Archetype Sufficiently Pleads Its Conversion and Intentional Interference Claims Because Schneider's Preemption and Economic-Loss Arguments Fail at the Pleading Stage</u>.**

Schneider's preemption arguments are premature and contrary to controlling authority. Federal Rule of Civil Procedure 8 expressly permits a plaintiff to plead "alternative or hypothetical" theories of liability, even if it can ultimately prevail on only one. Fed. R. Civ. P. 8(d)(2)–(3). Because of this liberal pleading standard, courts may not treat allegations supporting one theory as admissions defeating another. *See Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 700–01 (9th Cir. 2021) ("a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case"). Each count must be evaluated independently, and dismissal based on preemption at the Rule 12(b)(6) stage is improper. *See Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, 2022 WL 22868066, at *2–3 (D. Nev. Aug. 12, 2022) (explaining that Rule 8 allows alternative theories and NUTSA does not bar pleading overlapping claims at this stage).

Consistent with Rule 8, courts in this district consistently hold that NUTSA preemption cannot be resolved on a motion to dismiss. *See id.*, at *2–4 (declining to dismiss tort claims as preempted because the analysis "requires a factual determination inappropriate on a motion to dismiss"); *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs.*, 2021 WL 4466312, at *5 (D. Nev. Sept. 29, 2021) (declining to dismiss because preemption is premature); *Montgomery v. eTreppid Techs., LLC*, No. 306-CV-00056-PMPVPC, 2008 WL 942524, at *3 (D. Nev. Apr. 7, 2008) (denying defendant's preemption argument on a 12(b)(6) motion to dismiss).

11

Critically, one the very cases Schneider cites, and the only one addressing NUTSA preemption at the Rule 12(b)(6) stage,[3] supports Archetype's position, not Schneider's. In *Montgomery*, the defendant moved to dismiss tort claims as preempted under NUTSA at the pleading stage. *Id.* The court rejected the argument, holding:

> [NUTSA's] does not provide a blanket preemption… If the plaintiff asserts claims that do not depend on the information at issue being deemed a trade secret, the Act will not preclude those claims.… Even if any of the [] claims are duplicative of the misappropriation of trade secrets claim and therefore preempted by the [NUTSA], eTreppid is entitled to plead the claims in the alternative under Rule 8. eTreppid cannot recover on both types of claims….However, it may plead the statutory and non-statutory claims in the alternative at this stage of the proceedings, and it therefore would be premature to dismiss the eTreppid's common law claims.

*Id.* (citing *Frantz,* 999 P.2d at 357–58; n.3).

The same is true for the economic loss doctrine. Courts routinely hold that applying the doctrine at the pleadings stage is improper because the court cannot yet determine whether the tort claims are independent of the contractual duties. *See Bond Mfg. Co. v. Ashley Furniture Indus.*, Inc., 2020 WL 13880615, at *2 (D. Nev. June 1, 2020) (declining dismissal at the 12(b)(6) stage because the interplay between tort and contract theories cannot be assessed on 12(b)(6)).

Here, Archetype's conversion and intentional-interference claims do not depend on a finding that the information qualifies as a trade secret, nor are they purely contractual. Conversion concerns Schneider's wrongful dominion over Archetype's property, including tangible items such as the company-issued computer, which independently supports the claim. Intentional interference concerns Schneider's diversion of relationships and opportunities using his insider position, which

---

[3] Schneider's three remaining preemption authorities are inapposite. *See* ECF No. 39, 14:28-15:2. Each arises after discovery, either on appeal following a full trial or on summary judgment, not at the pleading stage. *Frantz*, the first case Schneider invokes, addressed NUTSA's effect on duplicative damages **after** a bench trial, not whether tort claims may cites pleaded in the alternative under Rule 8. 999 P.2d at 357. Nothing in *Frantz* requires a plaintiff to elect between contract, tort, or statutory theories before discovery. *Id.* Likewise, *Menalco v. Buchan*, 2010 WL 428911, at 22 (D. Nev. Feb. 1, 2010), and *Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1183 (D. Nev. 2003), were decided at summary judgment—after a factual record was developed. These cases therefore provide no basis for dismissing Archetype's tort claims at the pleadings stage.

does not depend on trade-secret status. These claims involve different elements, duties, and remedies than the contract and trade-secret claims.

And critically, at this stage, Rule 8 controls. Archetype is entitled to pursue alternative claims based on the same nucleus of facts until the record establishes whether the information constitutes a trade secret and whether the tort claims overlap with contractual duties. Precluding Archetype from "pursuing those claims at this nascent stage could unfairly leave it without a remedy for wrongs committed against it." *Interior Electric*, 2022 WL 22868066, at *3. Accordingly, the Court should deny Schneider's request to dismiss Counts IX and XI under NUTSA preemption or the economic loss doctrine.

### 6. Archetype States a Plausible Civil Conspiracy Claim.

Under Nevada law, a civil conspiracy requires allegations that "(1) a conspiracy agreement was formed; (2) to unlawfully harm the plaintiff; (3) an act of fraud was committed in furtherance of the conspiracy; and (4) resulting damages." *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 74–75, 110 P.3d 30, 51 (2005), abrogated on other grounds; *Streeter v. Izadi*, 2021 WL 4301480, at *5 (D. Nev. Sept. 21, 2021); *Davenport v. GMAC Mortg.*, 129 Nev. 1109 (2013) (slip copy). Nevada courts and federal courts applying Nevada law repeatedly confirm that a conspiracy may be inferred from circumstantial evidence, and that dismissal is inappropriate where the complaint plausibly alleges coordinated conduct advancing an unlawful objective. *See Streeter*, 2021 WL 4301480, at 5; *Davenport*, 129 Nev. 1109.

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations sounding in fraud be pled with particularity; meaning the plaintiff must identify the "time, the place, the identity of the parties involved, and the nature of the fraud or mistake." *Brown v. Kellar*, 97 Nev. 582, 583–84, 636 P.2d 874, 874 (1981); *see Iovino v. Amtrust Fin. Servs., Inc*, No. 2:22-CV-01974-APG-NJK, 2024 WL 2836111, at *4 (D. Nev. June 4, 2024). Archetype satisfies that

standard. The Complaint alleges that Schneider agreed with BLG to work together to steal and misappropriate Archetype's trade secrets and confidential information; that the parties executed a JVA and made additional oral agreements in furtherance of this unlawful plan; that Schneider secretly transmitted Archetype's proprietary materials to BLG; and that Archetype was damaged as a direct result of their coordinated misconduct. ECF No. 1, at ¶¶ 166. The Complaint even identifies specific dates, specific transmissions of confidential material, and the identities and roles of each participant.

Thus, Schneider's argument that Archetype fails Rule 9(b) is meritless. Courts have upheld conspiracy pleadings far less detailed than those presented here. *See Davenport*, 129 Nev. at *4 (slip copy) (holding that although the complaint was "somewhat imprecise" in describing the alleged conspiracy, the plaintiff still satisfied NRCP 9(b), and dismissal of the civil-conspiracy claim was error).[4] Archetype's allegations therefore comfortably meet the heightened pleading standard.

Because Archetype plausibly alleges a conspiratorial agreement, overt acts in furtherance of that agreement, fraudulent conduct, and resulting damages, the civil-conspiracy claim is sufficiently pled and Schneider's Motion to dismiss should be denied.

**B. IF THE COURT GRANTS THE MOTION, ARCHETYPE SHOULD BE GIVEN LEAVE TO AMEND.**

If the Court grants the Motion in any respect, Archetype should be granted leave to amend in order to cure any alleged deficiency. *See EVIG, LLC v. Natures Nutra Co.*, 2023 WL 4934339, at *2 (D. Nev. Aug. 2, 2023) ("If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment.").

---

[4] *See Yount v. Criswell Radovan, LLC*, 136 Nev. 409, 414–15, 469 P.3d 167, 172 (2020) ("Where a Nevada rule is similar to an analogous federal rule, the cases interpreting the federal rule provide persuasive authority as to the meaning of the Nevada rule.").

## III. CONCLUSION

Schneider's Motion asks the Court to disregard well-pled allegations, resolve factual disputes, and impose a heightened pleading burden that Nevada law does not require. At this stage, the Complaint's detailed factual allegations, and the Court's prior findings in the Preliminary Injunction ruling, easily state plausible claims for breach of fiduciary duty, breach of contract, breach of the implied covenant, and the related torts Schneider challenges. Rule 8 permits Archetype to pursue alternative theories, and nothing in the economic-loss doctrine or NUTSA preemption justifies dismissal at the pleading stage. Because Archetype has more than met its burden, Schneider's Rule 12(b)(6) motion should be denied in its entirety.

DATED this 8th day of December, 2025.

/s/ Kevin N. Anderson
Kevin N. Anderson, Esq.
Nevada State Bar No. 4512
FABIAN VANCOTT
2275 Corporate Cir., Suite 220
Henderson, NV 89074
Telephone:    (702) 233-4444

*Attorney for Plaintiff*