1  Kevin N. Anderson
   Nevada State Bar No. 4512
2  FABIAN VANCOTT
   2275 Corporate Cir., Suite 220
3  Henderson, NV 89074
   Telephone:    (702) 233-4444
4  kanderson@fabianvancott.com

5  Hilary R. Adkins (admitted *pro hac vice*)
   Utah State Bar No. 18296
6  FABIAN VANCOTT
   95 South State Street, Suite 2300
7  Salt Lake City, UT 84111
   Telephone: (801) 531-8900
8  hadkins@fabianvancott.com

9  *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| ARCHETYPE CAPITAL PARTNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SCHNEIDER, an individual residing in Texas,<br><br>Defendant. | Case No. 2:25-CV-01686-GMN-BNW<br><br>**PLAINTIFF'S OPPOSITION TO NON-PARTY BULLOCK LEGAL GROUP, LLC'S MOTION FOR RECONSIDERATION** |
|---|---|

1

Plaintiff Archetype Capital Partners, LLC ("**Archetype**") by and through its counsel of record, Fabian VanCott, submits the following Opposition to NonParty Bullock Legal Group, LLC's ("**BLG**") Motion for Reconsideration ("**Opposition**"). ECF No. 57. This Opposition is based on the following memorandum of points and authorities, the exhibits attached hereto, and any oral argument or other matters the Court may deem appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

BLG's Motion for Reconsideration ("**Motion**") asks the Court to unwind narrowly tailored relief the Court already considered, explained, and ordered to comply with Rule 65 and this Court's jurisdictional limits. That is not the function of reconsideration. BLG identifies no newly discovered evidence, no intervening change in controlling law, and no overlooked fact. Instead, it repackages arguments the Court addressed when it granted the preliminary injunction and attempts to relitigate the scope of the Court's equitable authority to preserve traceable proceeds of misappropriation.

The Order is clear. The Court dismissed BLG as a named defendant for lack of personal jurisdiction, declined to restrain claimant distributions and non-culpable third parties, and restrained only the portion of the attorney-fee pool within QSF #2 attributable to Andrew Schneider ("**Schneider**") and "any party acting in concert with him (like Bullock Legal Group)" to preserve the status quo pending adjudication of Archetype's equitable claims. ECF No. 48 at 30:1-12 & nn.13-14. Nothing in BLG's Motion shows that decision was clearly erroneous, manifestly unjust, or contrary to law as required. BLG's failure to meet its burden for reconsideration is fatal to the reconsideration requested. Therefore, the Motion should be denied.

## II. MOTION FOR RECONSIDERATION STANDARD

A district court generally should not grant a motion for reconsideration absent newly discovered evidence, clear error, or an intervening change in controlling law. *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020) (internal quotation marks omitted); *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014); LR 59-1(a). The moving party must present "facts or law of a strongly convincing nature" sufficient to warrant reversal of the prior decision. *United States v. Han*, No. 2:15-CR-69 JCM (NJK), 2021 WL 5605175, at *1 (D. Nev. Nov. 30, 2021) (quoting *Hernandez v. IndyMac Bank*, No. 2:12-cv-00369-MMD-CWH, 2017 WL 1550233, at *1 (D. Nev. Apr. 28, 2017)).

Motions for reconsideration of interlocutory orders are committed to the Court's discretion. But they are an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks omitted). To succeed, the movant must demonstrate that reconsideration is warranted by compelling facts or law that the Court previously overlooked. *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).

Local Rule 59-1 requires a party seeking reconsideration to "state with particularity the points of law or fact the court has overlooked or misunderstood," as well as any changes in legal or factual circumstances that purportedly justify relief. LR 59-1(a). Moreover, reconsideration "should not be granted, absent highly unusual circumstances." *Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999)). Where the movant fails to establish any basis justifying relief, reconsideration is properly denied. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

Finally, motions for reconsideration are disfavored and are not proper vehicles for "rehashing" arguments previously raised or for providing an unhappy litigant another opportunity to persuade the Court. *See United States v. De Rong Shang*, No. 2:11-CR-110-RLH, 2012 WL 234646, at *1 (D. Nev. Jan. 25, 2012); LR 59-1(b).

### III.     ARGUMENT

**A. BLG Does Not Meet the Standard for Reconsideration.**

BLG fails to satisfy the standard for reconsideration outlined above. It identifies no newly discovered evidence, no intervening change in controlling law, and no fact or legal issue the Court overlooked or misunderstood. Instead, BLG simply rehashes Rule 65 and jurisdictional arguments already raised and rejected in the preliminary injunction briefing, and seeks a second merits determination on issues the Court has already decided. That is not a proper basis for reconsideration. *See De Rong Shang*, No. 2:11-CR-110-RLH, 2012 WL 234646, at *1 (denying reconsideration because the movant's arguments were "essentially no different" from those previously presented); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (affirming denial of reconsideration where the motion "presented no arguments that had not already been raised" in the prior briefing).

BLG's reliance on *Kirschenbaum,* a Seventh Circuit non-binding case, does not alter the Ninth Circuit analysis. *Kirschenbaum* merely recognizes that a non-party allegedly bound by restraining order that seized assets allegedly subject to forfeiture may seek an appeal rather than risk contempt.[1] *United States v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998). It does not relax Rule 59(e), supply new law the Court previously overlooked (let alone controlling or binding law), or demonstrate error in the Court's reasoning.

---

[1] *Kirschenbaum* is procedurally distinguishable as it arose on appeal, not in the context of a motion for reconsideration.

4

To the extent BLG contends that the Court "overlooked or misunderstood" the law or facts, its argument reduces to a mere disagreement with the Court's application of Rule 65(d). BLG asserts that because the Court dismissed BLG for lack of personal jurisdiction, it could also not identify BLG as a party acting in concert with Schneider. But that is not a misunderstanding of the law; it is the precise issue the Court considered and resolved. The Order expressly sets forth the governing Rule 65(d) standard, explaining that "[t]he rule limits who may be bound by an injunction to parties, their agents, and non-parties "in active concert or participation" after actual notice." ECF 48, at 28:13-14. The Court then applied that standard to the record before it and narrowly tailored the relief accordingly. BLG's disagreement with that analysis does not establish that the Court overlooked controlling law or material facts. Because BLG fails to satisfy the threshold requirements for reconsideration – newly discovered evidence, change in *controlling law*, or facts or law overlooked by the Court – the Motion should be denied on that basis alone.

Compounding the fatal defect, BLG uses this Motion to advance arguments it could have, and should have, raised during the original TRO and preliminary-injunction briefing. Reconsideration is an improper vehicle "to raise arguments . . . for the first time when they could reasonably have been raised earlier in litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). BLG's newly repackaged Rule 65 and "independent interest" theories arise not from any change in the law or fact, but from its dissatisfaction with the Court's carefully cabined order preserving only the traceable proceeds attributable to Schneider and those acting in concert with him. That is not newly discovered evidence, not an intervening change in controlling law, and not clear error. It is precisely the type of second bite at the apple that reconsideration forbids and are rejected by the courts. *Id.*; *De Rong Shang*, 2012 WL 234646, at *1.

**B. Even If the Court Reaches the Merits, BLG's Arguments Misread the Order and Misstate the Court's Equitable Authority.**

Even if the Court considers BLG's substantive arguments, they still fail. BLG's central premise is incorrect: the Order did not and could not "enjoin BLG as a defendant" after dismissing BLG for lack of personal jurisdiction. To the contrary, the Court dismissed BLG, expressly declined to restrain claimant distributions, administrative costs, or payments to non-culpable third parties, and carefully cabined relief to preserve only a discrete, identifiable portion of the attorney-fee pool within QSF #2 attributable to Schneider and parties acting in concert with him. ECF No. 48 at 30:1-6, 33-34.

The restraint is not punitive and not a jurisdictional overreach. It is an exercise of the Court's equitable authority to preserve traceable proceeds necessary to protect effective final relief on Plaintiff's equitable claims. More importantly, the express language of Rule 65(d) allows a court to restrain "other persons who are in active concert or participation" with a party. Said differently, BLG's argument is contrary to the plain language of the rule and should be rejected.

### 1. Federal Courts Have Inherent Authority to Preserve a Discrete Res to Protect Equitable Relief.

Federal courts have long recognized that "[o]ne expression of the court's inherent authority to fashion equitable relief is the *in rem* injunction." *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1105 (C.D. Cal. 2001). "Federal courts have issued injunctions binding on all persons, regardless of notice, who come into contact with property which is the subject of a judicial decree," because "in rem orders [are] particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties." *United States v. Hall,* 472 F.2d, 265–66 (5th Cir.1972) (citations omitted). Accordingly, courts "must have the power to issue orders ... tailored to the exigencies of the situation and directed to protecting the court's judgment." *Id.*, at 266; *accord United States v. Paccione,* 964 F.2d 1269, 1275 (2d

6

Cir.1992) (explaining that orders issued "to preserve property for forfeiture following a RICO conviction ... closely resemble remedies such as garnishment or attachment, which may be directed routinely at third-parties, who have no interest in the merits of the underlying litigation.").

Consistent with this authority, the Ninth Circuit recognizes that federal courts may preserve assets where equitable remedies are sought and dissipation would defeat meaningful relief. *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985). Where, as here, a plaintiff seeks equitable relief such as unjust enrichment, disgorgement, an accounting, or a constructive trust, an asset-preservation injunction is proper to preserve the possibility of effective final relief. *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559-60 (9th Cir. 1992).

The Court also expressly found the required equitable nexus. It rejected the argument that no connection existed between the restrained proceeds and the relief sought, explaining that the DTSA and NUTSA expressly authorize unjust enrichment and disgorgement, which supplies the necessary link between the alleged misappropriation and the attorney-fee proceeds preserved in QSF #2. ECF No. 48 at 30:6-12 & n.13. *See also* 18 U.S.C. § 1836(b)(3)(B)(i)(II); NRS 600A.050(2). BLG identifies no legal error in that analysis.

### 2. The Record Demonstrates the Necessity of Preserving the Funds to Prevent Unjust Enrichment.

The evidentiary record further supports the necessity of preserving these funds. Plaintiff alleged, and the Court agreed, that "[p]reventing this distribution is essential to preserve the relief Archetype seeks and to prevent [Schneider and BLG] from unjustly enriching themselves with funds derived directly from misappropriated trade secrets." ECF No. 9 at 38:18-20. Schneider's and BLG's share of the settlement proceeds "represents profits unjustly derived from Archetype's Trade Secrets and Confidential Information." ECF No. 9 at 42:11-13.

Those proceeds fund the vendor payments at issue. Had Archetype not been cut out of the arrangement, it would have been paid from BLG's portion of QSF #2. Preserving the res maintains the status quo pending adjudication of Plaintiff's equitable claims and prevents dissipation of the very proceeds Plaintiff seeks to recover. BLG fails to raise new law, facts, or error regarding the status quo and the Court's reasoning for maintaining the status quo.

### 3. *The Court Has Jurisdiction Over the Settlement Funds and BLG's Interest in Them.*

Preserving the res also falls squarely within the Court's jurisdictional authority. BLG's contention that dismissal for lack of personal jurisdiction insulates its share of the Defendant X settlement from restraint misunderstands both the nature of the relief ordered and the Court's power over the settlement proceeds themselves.[2]

First, the Court's jurisdiction is grounded in the res. The Defendant X settlement funds are the product of conduct directed into Nevada, involve hundreds of Nevada residents, and are traceable to the alleged misappropriation of Archetype's trade secrets. A court's equitable jurisdiction to preserve such funds does not disappear merely because a beneficiary of those funds has been dismissed as a named defendant. Where proceeds are intertwined with conduct subject to the Court's authority, the Court retains jurisdiction to preserve those proceeds and to bind those who control or benefit from them.

Second, BLG purposefully created and exercised substantial Nevada-directed contacts that directly relate to the settlement proceeds. The Joint Venture Agreements ("**JVAs**") between BLG and co-counsel firms establish that BLG, not co-counsel, maintains direct attorney-client relationships with claimants, including Nevada residents, through standardized settlement

---

[2] Moreover, BLG fails to inform the Court that it has entered into agreements with mass tort plaintiffs in Nevada that are believed to be part of the misappropriated trade secrets. BLG also fails to inform the Court of its other connections to this forum that has recently been discovered by Archetype. Based on the newly discovered connections to Nevada, Plaintiff intends to seek leave to amend its complaint based on these facts to cure any jurisdictional deficiencies.

authority provisions. Under those agreements, BLG is vested with exclusive authority to negotiate settlements, bind claimants to settlement frameworks, and control the disposition of settlement proceeds. Nevada resident claimants subject to those agreements are, in turn, subject to the Defendant X Settlement and the very funds at issue here.

The scope of BLG's Nevada contacts is substantial as recently discovered. According to the January 30, 2025 VGA inventory Schneider uploaded to a litigation funder's Dropbox, BLG's VGA claim inventory included 974 Nevada resident claimants, 605 of whom executed retainers directly with BLG. All but two of those Nevada claims were acquired *after* Schneider entered into the JVA with BLG and *after* Schneider shared Archetype's proprietary methodologies with BLG. Those claims are not incidental. They are part of the docket that enabled BLG to pursue, and monetize, the Defendant X settlement framework the Court found likely derived from Archetype's trade secrets.

The JVAs underscore BLG's central role. They vest BLG with unilateral settlement authority, exclude co-counsel from negotiations, and require acceptance of any settlement framework BLG negotiates. Through these provisions, BLG exercised direct control over settlement negotiations and outcomes for all claimants across the co-counsel network, including the 974 Nevada residents in BLG's inventory. That authority is the mechanism by which BLG structured the settlement and positioned itself to receive attorney fees from it.

### *4. BLG's Operational Model Further Ties the Settlement Proceeds to the Misappropriation.*

BLG's operational conduct reinforces this conclusion. To qualify for participation in settlement agreements, BLG cannot actively advertise for or directly solicit new claimants. As a result, BLG's growth model depends on JVAs with co-counsel firms rather than traditional marketing. Under those JVAs, BLG is permitted to spend funds only on the SimplyConvert system,

1  and all co-counsel are contractually required to use as their case-management platform, built on
2  Archetype's proprietary material and models.

3        This structure allows BLG to continue acquiring new claims through co-counsel while
4  asserting that it is not advertising or directly retaining new claimants. Through JVAs, co-counsel
5  upload claims into SimplyConvert, BLG exercises centralized settlement authority over those
6  claims, and BLG maintains control over the litigation and settlement process without appearing to
7  solicit new business.

8        Archetype has shown that its proprietary materials were used to create and fuel this model.
9  Those materials were not only used to advance the Defendant X settlement framework, but also to
10 secure litigation funding and induce co-counsel to enter into JVAs with BLG. In its reply briefing
11 on the preliminary injunction, Archetype specifically identified the memorandum BLG sent to
12 Stranch, Jennings & Garvey PLLC ("**Stranch**") as evidence that Archetype's proprietary
13 information was used to obtain JVAs and capital. ECF No. 32 at 6:10–13, 16–17.

14       The Nevada connections are not theoretical. One co-counsel firm, Van Law, is a Nevada
15 LLC and provided BLG with 21 claimants. Another, Stranch, is registered in Nevada and maintains
16 an office in Nevada. On December 8, 2024, BLG and Schneider sent Stranch a memorandum
17 proposing to "mine your data for additional claims" using the VGA framework Schneider had
18 shared, (ECF No. 69-47; *see also* ECF No. 70-46) and BLG subsequently executed a JVA with
19 Stranch on February 3, 2025. These deliberate, Nevada-directed acts are tied directly to the
20 expansion of BLG's VGA docket and the settlement proceeds now restrained.

21       Plaintiff has further shown that the success of the Defendant X settlement flowed from a
22 docket Archetype developed and that Schneider, through his role at Archetype, shared with BLG,
23 which BLG leveraged to expand its claim inventory. ECF No. 29 at 6:16-7:11; ECF No. 32 at 8:5–
24 13. The Court already found a likelihood that the Defendant X settlement framework was
25

structured using Archetype's proprietary methodologies disclosed by Schneider to BLG. ECF No. 48 at 30:6–12.

In short, the Defendant X settlement was structured on information Schneider shared with BLG, resulted in BLG acquiring hundreds of Nevada resident claims, and generated the attorney-fee proceeds the Court restrained. Those proceeds are the very fruits of the alleged misappropriation. The Court therefore has authority to preserve them and to bind BLG in connection with those funds, notwithstanding BLG's dismissal as a named defendant.

### 5. *The Involvement of a QSF Administrator Does Not Defeat the Court's Authority.*

The Ninth Circuit recognizes that courts may restrain assets controlled or beneficially owned by a party, even if that party does not formally possess or hold title to them. *See FDIC v. Garner*, 125 F.3d 1272, 1280-81 (9th Cir. 1997). Courts routinely preserve identifiable proceeds administered by third parties where necessary to prevent dissipation and protect equitable relief, including by directing banks and other non-parties that hold or administer the assets and not to transfer or distribute them once on notice of the injunction. *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1527, 1527–28 (C.D. Cal. 1989) (enjoining "any banks, savings and loan associations, or other financial institutions" with notice of the order from transferring defendants' assets).

The Order here does not issue a broad command to unknown third parties; it preserves only a specifically identified portion of the attorney-fee pool within QSF #2 tied to Schneider and those acting in concert with him. ECF No. 48 at 30:5–12 & n.13. *See also cPanel, LLC v. Asli*, 719 F. Supp. 3d 1133, 1157 (D. Or. 2024) (granting an asset freeze against defendants and those acting in active concert with them, while refusing to impose an injunction that "lacks a knowledge requirement" or "indiscriminately freezes all of [the] defendants' assets"). This restraint is narrowly tailored, grounded in equity, and designed solely to prevent frustration of final relief.

**C. The Order Is Consistent With Rule 65(d) and the Supreme Court's Anti-Evasion Principle.**

Under Rule 65(d)(2), an injunction binds only (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who receive actual notice of the order and are in active concert or participation with any of those persons. Fed. R. Civ. P. 65(d)(2). The rule thus reaches not only named defendants, but also those who aid or abet them or whose relationship to the enjoined party is sufficiently close, such as in privity with the party, to prevent circumvention of the Court's decree. *See Saga Int'l, Inc. v. John D. Brush & Co.*, 984 F. Supp. 1283, 1286 (C.D. Cal. 1997). Whether a nonparty is bound "depends on an appraisal of his relations and behavior and not upon mere construction of terms of the order." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14–15 (1945); *see also Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010).

Courts have long recognized that a district court "may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party." *Kirschenbaum*, 156 F.3d at 794. But that limitation cuts against BLG— it does not favor it. Even if BLG were not acting as an "officer" or "agent" of Schneider, Rule 65(d) independently permits binding a nonparty that "act[s] in concert with" the enjoined party. *See Vance v. Block*, 881 F.2d 1085 (9th Cir. 1989) ("A court order binds parties as well as those with actual knowledge of the order who act in concert with the parties.").

Rule 65(d)(2) derives from the "common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control." *Regal Knitwear Co.,* 324 U.S. at 14. "In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.*

Consistent with this doctrine, a nonparty may be bound by an injunction where it either (i) aided and abetted the enjoined party's conduct or (ii) is "legally identifiable" with the enjoined party, i.e., in privity. *Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016); *TD Ameritrade, Inc. v. Nevada Agency & Tr. Co.*, No. 308-CV-00245-LRH-RAM, 2008 WL 4787138, at *6 (D. Nev. Oct. 30, 2008) (explaining that "the aim of Rule 65(d) is to extend the reach of injunctions to nonparties who nonetheless share common interests with a party, are in privity with a party, are represented by a party, or are subject to a party's control."). A finding of legal identity may rest on a non-party's "close affiliation with the enjoined party prior to the injunction." *Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016).

BLG also misstates Rule 65(d) by suggesting that a nonparty cannot be bound absent a prior contempt violation. That argument ignores the plain language of the rule. It also ignores Rule 65's anti-evasion purpose. The rule exists precisely to prevent defendants from avoiding injunctions through those acting in concert with them. *Regal Knitwear*, 324 U.S. at 13-14.

Courts routinely apply Rule 65(d)(2) to bind nonparties who act in active concert or participation with an enjoined party, even where those nonparties have not yet been formally added to the case. In *Pyro Spectaculars N., Inc. v. Souza*, the court enjoined a defendant's new employers and related individuals despite their nonparty status because there was "substantial evidence" they were "acting in concert and in active participation with defendant in accessing, obtaining, and/or using" the plaintiff's confidential information. 861 F. Supp. 2d 1079, 1093 (E.D. Cal. 2012). The court emphasized that Rule 65(d) turns on conduct, not captions, and permits injunctions against nonparties who collaborate in or benefit from the enjoined misconduct after receiving notice. *Id.* That principle applies here: the restraint does not hinge on BLG's formal status as a party, but on

the Court's finding that BLG acted in concert with Schneider in using Plaintiff's proprietary information and deriving settlement proceeds from that conduct.

BLG cannot now shift responsibility to Schneider by suggesting it merely has a separate cause of action against him. BLG affirmatively hired Schneider, worked alongside him, authorized him to act on its behalf, and failed to conduct diligence regarding his ongoing obligations and employment.

### 1. BLG Was in Privity With Schneider and Did Not Act Independently.

"Privity" denotes a legal conclusion that the relationship between a party and a nonparty is sufficiently close to justify binding the nonparty to an injunction. *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). In the injunction context, privity exists where the nonparty's interests are so closely aligned with the enjoined party's interests that it is fair to conclude those interests were represented and adjudicated. *Nat'l Spiritual Assembly*, 628 F.3d at 849.

This principle reflects "the common law principle that a judgment can bind persons not parties to the litigation in question and not subject *in personam* to the jurisdiction of the court if the persons are in privity with parties to the litigation." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992) (citation omitted). "Privity represents a legal conclusion that the relation between the party and non-party is so close that the judgment may fairly bind the non-party." *Id.*, at 1277–78. A "'privy' may include those whose interests are represented by one with authority to do so." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980).

Privity is bound by due process. An injunction may not extend to persons who act independently and whose rights have not been adjudicated. *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934). But where a nonparty's interests were represented and it had notice and

an opportunity to be heard, due process is satisfied. *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).

This is not a case of independent actors as suggested by BLG. The record establishes that BLG and Schneider were in privity: they entered into a JVA governing settlement structure and fee allocation (ECF No. 9 at ¶ 34; ECF No. 69 at ¶ 58); BLG employed Schneider (ECF No. 69 at ¶ 82); Schneider represented to third parties that he was acting on BLG's behalf (ECF No. 69 at ¶¶ 60, 62, 90-91); BLG authorized Schneider to negotiate and design settlement frameworks (ECF No. 69 at ¶ 86, 88); and BLG directly benefited from those actions. ECF No. 48 at 24:10-18. Based on this record, the Court found a likelihood that the Defendant X settlement framework was structured using Plaintiff's proprietary methodologies disclosed by Schneider to BLG. ECF No. 48 at 30:6-12. These facts were fully presented to, and expressly considered by, the Court before it granted the injunction.

BLG's reliance on *Heyman v. Kline* fails because BLG did not act independently and did not possess a "genuinely independent interest" in proceeds divorced from the alleged misappropriation. The restrained funds are intertwined with the conduct at issue and were preserved solely to maintain the status quo pending adjudication.

### 2. BLG Had Notice and Its Day in Court.

Due process concerns are satisfied where a nonparty had notice and an opportunity to be heard. *Nat'l Spiritual Assembly*, 628 F.3d at 849. This is not a case where the Court bound unknown entities with no notice. BLG had notice, appeared, opposed the TRO, and litigated the scope of injunctive relief. Simply because BLG was not successful in opposing the preliminary injunction does not mean it was deprived of due process – quite the opposite.

The Court also expressly considered the impact on nonparties and declined broader restraints, refusing to halt claimant distributions and other non-culpable payments. ECF No. 48 at

26:14-22, 30:1-6. Consideration of nonparty and public effects is a required part of the preliminary injunction analysis, and the Court already performed that analysis here. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

## IV.  CONCLUSION

BLG failed to meet the demanding standard required for reconsideration. Additionally, BLG failed to show that this case presents the "highly unusual circumstances" required to deviate from this Circuits precedent. The Court carefully considered the governing law, the evidentiary record, and the limits of its equitable authority, and it entered a narrowly tailored Order designed to preserve traceable proceeds and prevent evasion of effective relief. BLG's Motion merely repackages arguments already raised and rejected, and expresses disagreement with the Court's reasoned judgment. That is not a basis for reconsideration. Plaintiff respectfully requests that the Court deny BLG's Motion for Reconsideration in its entirety.

DATED this 6th day of January, 2026.

/s/ Kevin N. Anderson
Kevin N. Anderson, Esq.
Nevada State Bar No. 4512
FABIAN VANCOTT
2275 Corporate Cir., Suite 220
Henderson, NV 89074
Telephone:    (702) 233-4444

Hilary R. Adkins (admitted *pro hac vice*)
Utah State Bar No. 18296
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, UT 84111
Telephone: (801) 531-8900
hadkins@fabianvancott.com

*Attorneys for Plaintiff*