Pat Lundvall (NSBN 3761)
Chelsea Latino (NSBN 14227)
Laena St-Jules (NSBN 15156)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
plundvall@mcdonaldcarano.com
clatino@mcdonaldcarano.com
lstjules@mcdonaldcarano.com

*Attorneys for Defendant Bullock Legal Group, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARCHETYPE CAPITAL PARTNERS, LLC, a Nevada limited liability company, | Case No. 2:25-cv-01686-GMN-BNW |
| Plaintiff, | **DEFENDANT BULLOCK LEGAL GROUP, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| BULLOCK LEGAL GROUP, LLC, a Georgia limited liability company, and ANDREW SCHNEIDER, an individual residing in Texas, | |
| Defendant. | |

Defendant Bullock Legal Group, LLC ("BLG") submits this Motion to Dismiss Archetype Capital Partners, LLC's ("Archetype") First Amended Complaint, ECF No. 101 ("FAC"). This Motion is based on the following memorandum of points and authorities, the exhibits attached hereto, the pleadings and papers on file, and such other information that the Court may wish to consider.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

This case concerns Archetype's non-buyer's remorse after it declined to work with BLG on video game addiction ("VGA") lawsuits. The timeline is clear. BLG pioneered VGA litigation, filing the first such litigation in October 2023. Decl. of Tina Bullock Decl. ¶¶ 9–10, Ex. 1 ("Bullock Decl."). In May 2024, BLG sought additional funding, including through Archetype. *Id.* ¶ 30; FAC ¶ 61. Archetype, however, chose to decline to work with BLG in June 2024, Bullock Decl. ¶ 32, and Archetype supposedly thereafter began to work on VGA litigation, FAC ¶¶ 35–40. Without ever alleging that it told BLG that it offered any service outside of litigation funding or that anyone actually used any of its supposed other services, Archetype, which is not in the business of law, claims a far-flung conspiracy and harm because it was doing work on, apparently, everything from client intake to claims workup to claim valuation to lead generation to claim settlement. *See generally id.* Through this litigation, Archetype is trying to insert itself into the legal work BLG was already doing, claiming BLG misappropriated Archetype's trade secrets. This is entirely backwards. BLG's work is and has been independent of Archetype. To the extent there is any overlap with what Archetype has done, it is because Archetype based its work off BLG materials it unlawfully obtained through its self-described "insider," co-founder and former Archetype member Defendant Andrew Schneider ("Schneider"). *See id.* ¶ 72.

That is why BLG has sued Archetype, Archetype co-founder and owner Douglas Mayer ("Mayer"), and Schneider in Georgia, where the actual relevant conduct happened. *See* Ex. 7.[1] Because there are no real Nevada connections, Archetype's efforts to establish personal jurisdiction over BLG fail. BLG's relationships with Nevada VGA claimants and co-counsel are fundamentally centered in Georgia, and, in any event, BLG's continuation of its pre-existing work on VGA litigations with Nevada claimants and co-counsel has nothing to do with Archetype. Archetype's efforts to cure the personal jurisdiction defects that led to BLG's prior dismissal are insufficient.

---

[1] The case has been removed from state court to the Northern District of Georgia, Case No. 1:26-cv-01646-SDG.

1

Dismissal is also independently warranted because Archetype fails to state any claim against BLG. BLG categorically denies using any of Archetype's supposed trade secrets and confidential information. Nevertheless, even taking the false factual allegations of the FAC as true, as required on this Motion, Archetype does not state any claim for relief against BLG. Archetype's claims against BLG should be dismissed with prejudice.

## II.    FACTUAL ALLEGATIONS

BLG is a plaintiff's mass tort law firm incorporated in Georgia with its principal place of business in Acworth Georgia. Bullock Decl. ¶ 6. After BLG's owner and managing partner, Tina Bullock ("Bullock"), pioneered the concept of VGA litigation, BLG filed the first VGA lawsuit in the United States in October 2023. *Id.* ¶¶ 9–10. As part of its work to seek redress on behalf of its clients injured by VGA, BLG developed client intake and workup processes and claim valuations, among other necessary components for the successful management and prosecution of mass tort litigations. *Id.* ¶¶ 22–29. BLG also sought additional funding to support the work it was already undertaking around May 2024, including through Archetype. *See id.* ¶ 30; FAC ¶¶ 60–61. However, Archetype declined to work with BLG on June 5, 2024. Bullock Decl. ¶ 32.

BLG's number of VGA claimants has grown substantially since it filed its first case in 2023 due to Bullock's conference and media presence built through hard work and recognition of her work on VGA litigation. *See* Bullock Decl. ¶¶ 11–12.  BLG now has claimants in 55 U.S. states and territories, though BLG has never targeted any specific location. *Id.* ¶¶ 13–14. The growth is driven by BLG's work with marketers and other referral partners to identify VGA claimant leads and potential co-counsel opportunities. *Id.* ¶ 12. While BLG has Nevada VGA claimants and co-counsel, those relationships are subject to Georgia choice-of-law and/or arbitration clauses, and BLG has not filed any lawsuit in Nevada nor does it intend to do so. *Id.* ¶ 16.

Over three months after Archetype declined BLG's request for litigation funding, Schneider proposed to work with BLG as co-settlement counsel solely in his capacity as an attorney. *See* FAC ¶¶ 72–75. BLG and Schneider thereafter entered into a joint venture agreement ("JVA") where Schneider would act in his individual capacity as an attorney to, among other things, "[p]repare a settlement framework that maximizes the value of the overall [VGA] litigation instead of individual

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

claimants," "provid[e] strategic modeling," and "[p]inpoint potential bargaining issues and evaluate them so [BLG] is fully prepared." *See id.* ¶ 78. Schneider and BLG's relationship was established only by the terms of the JVA; BLG never hired Schneider as an employee. Bullock Decl. ¶ 34. This co-settlement counsel arrangement was specifically approved by Mayer, who discussed with Schneider that "having Schneider as an insider would . . . help Archetype stay involved with BLG's litigation funding and VGA claims review process." FAC ¶ 72.

The FAC contains many allegations of things Schneider purportedly did in connection with BLG's VGA litigation. *See generally id.* According to Archetype, Schneider disclosed Archetype's purported trade secrets and confidential information, though Archetype does not allege that BLG actually used any of these supposed trade secrets and confidential information in connection with any Nevada claimant or co-counsel. *See generally id.* For example, Archetype claims that its trade secrets and confidential information were in draft settlement documents for settlement discussions with "Defendant X." *See id.* ¶¶ 119, 125. But it does not claim that those proposals were actually approved by Defendant X or that they became part of the proposed settlement with Defendant X. BLG has not completed resolution and settlement of its claims against Defendant X, and no mediation is pending. Bullock Decl. ¶¶ 36–37. To date, BLG's only resolved VGA litigation claims are the small number of filed cases initially mediated in November 2024. *Id.* ¶ 37.

Based on Schneider's alleged use of Archetype's purported trade secrets and confidential information, Archetype initiated this lawsuit against Schneider and BLG.

## III.    PROCEDURAL HISTORY

Archetype filed its original complaint on September 8, 2025, ECF No. 1, and moved for a temporary restraining order and preliminary injunction against BLG and Schneider on October 15, 2025, ECF Nos. 8 & 9. The Court dismissed BLG from the action for lack of personal jurisdiction in its order granting in part and denying in part Archetype's motion for preliminary injunction. ECF No. 48 at 33–34. Although BLG was dismissed, the order restrained distribution of BLG's share of the Defendant X settlement, and BLG has sought reconsideration of the order. *Id.* at 30; ECF No. 57. BLG's reconsideration motion is still pending, and Archetype's filing of the FAC does not change the validity of the merits of BLG's reconsideration motion. After BLG filed its reconsideration

motion, Schneider appealed the preliminary injunction order. ECF No. 58. The Ninth Circuit has stayed that appeal pending resolution of BLG's reconsideration motion. ECF No. 84.

On March 6, 2026, Archetype moved for leave to file its FAC. ECF No. 85. Because BLG was a non-party at the time the motion was filed, it did not file an opposition to avoid any suggestion that it was consenting to personal jurisdiction in this Court.[2] *See, e.g.*, *Smith v. TFI Family Servs., Inc.*, 2019 WL 1556250, at *3 & n.31 (D. Kan. Apr. 10, 2019) (collecting cases and finding parties proposed to be added as defendants "do not have standing to oppose the Motion to Amend because they are non-parties"). Leave to amend was granted, ECF No. 100, and Archetype filed its FAC on March 24, 2026, ECF No. 101. The FAC asserts claims against BLG, premised largely on the supposed misappropriation of Archetype's trade secrets and confidential information, for aiding and abetting Schneider's breach of fiduciary duties; misappropriation of trade secrets under federal and Nevada law; conversion; conspiracy; and intentional interference with economic advantages and prospective relationships. *See generally id.*

Before Archetype filed its FAC, BLG and Bullock filed a complaint against Archetype, Schneider, and Mayer in the Superior Court of Cobb County, Georgia, based on those defendants' efforts to steal from and extort BLG. Ex. 7. That action has been removed to federal court and is currently pending before the Northern District of Georgia, Case No. 1:26-cv-01646-SDG.

## IV.    ARGUMENT

### A.    Dismissal Is Warranted Under Rule 12(b)(2) For Lack of Personal Jurisdiction.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In analyzing a plaintiff's pleadings, a court "may not assume the truth of allegations in a pleading that are contradicted by affidavit," *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018), and only takes uncontroverted factual allegations as true, *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir.

---

[2] Archetype spuriously claims that BLG has "had sufficient contact with Nevada, including through conduct in this litigation," without elaborating how that could possibly be true as BLG has consistently challenged personal jurisdiction. *See* FAC ¶ 13.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1977). Further, a plaintiff's pleadings must sufficiently establish personal jurisdiction over *each* defendant individually, for *each* claim. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

Under both Nevada's long-arm statute and the Due Process Clause, a court may assert jurisdiction over a nonresident defendant only where the nonresident has "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014); NRS 14.065. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Because neither exists here, Archetype cannot meet its burden of demonstrating that jurisdiction exists over BLG.

**1.      There Is No General Jurisdiction Over BLG in Nevada.**

General jurisdiction arises where a defendant has "substantial" or "continuous and systematic" ties with the forum, even if those ties are unrelated to the litigation. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, BLG is not domiciled or at home in Nevada, nor does Plaintiff allege as much. Rather, Archetype alleges that BLG "is a Georgia limited liability company with its principal place of business located in Atlanta, Georgia." FAC ¶ 8. Thus, BLG is not subject to general jurisdiction in Nevada.

**2.      There Is No Specific Jurisdiction Over BLG in Nevada.**

Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The specific jurisdiction analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the

5

necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* Thus, "foreseeability of causing *injury* in another State . . . is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Nor do "financial benefits accruing to the defendant from a collateral relation to the forum State . . . support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980).

In determining whether specific jurisdiction exists, courts in the Ninth Circuit apply the following three-prong test: "(1) the defendant must either 'purposefully direct [its] activities' toward the forum or 'purposefully avail[] [itself] of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Where, as here, the plaintiff fails to satisfy either of the first two prongs, "personal jurisdiction is not established in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Only if the plaintiff meets that burden does "the burden then shift[] to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

Archetype cannot establish personal jurisdiction for any of its claims because BLG did not purposefully avail itself of or direct its conduct towards Nevada, Archetype's claims do not arise out of and are not related to BLG's alleged Nevada-based contacts, and the exercise of jurisdiction here would not be reasonable.

### (a) BLG Did Not Purposefully Direct its Conduct Towards, or Avail Itself of, Nevada.

Archetype claims that BLG's relationships with Nevada VGA claimants and co-counsel somehow establish personal jurisdiction. *See* FAC ¶¶ 13, 109–10. These relationships, however, are fundamentally centered in Georgia. Each of BLG's contracts with a Nevada VGA claimant has Georgia choice-of-law and arbitration clauses, and each of BLG's contracts with Nevada co-counsel has Georgia arbitration clauses. Bullock Decl. ¶ 16. BLG has not filed any Nevada VGA lawsuit and has no intention of doing so. *See id.* On these facts, Archetype cannot establish purposeful direction

6

or availment.

Purposeful direction "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forums state." *Schwarzenegger*, 374 F.3d at 803. The only relevant intentional act BLG could conceivably have aimed at Nevada is entering into Georgia-based attorney-client and co-counsel relationships with Nevadans. But the mere fact of entering into an attorney-client or co-counsel relationship does not cause Archetype any harm. This is particularly true because Archetype, as a non-law firm, cannot form attorney-client or co-counsel relationships with anyone. So Archetype is not in competition with BLG and is not harmed by any such relationship between BLG and Nevadans. There are no other intentional acts expressly aimed at Nevada alleged.

"'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher*, 911 F.2d at 1362. An out-of-state attorney performing legal work outside of the forum, however, is not "the promotion of business within" the forum; "the business that [BLG] promoted was legal representation in [Georgia]." *Id.*

Both the purposeful direction and availment tests are designed to frame the "inquiry into the defendant's 'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1089 (9th Cir. 2023). Archetype cannot hale BLG into Nevada based on attenuated attorney-client and co-counsel relationships.

**(b)      Archetype's Trade Secrets Claims Do Not Arise Out of or Relate to BLG's Nevada Contacts.**

Archetype asserts a vague theory of personal jurisdiction for its trade secrets claims. It focuses its allegations on BLG's VGA relationships with a Nevada law firm and with Nevada claimants. *See* FAC ¶¶ 13, 109–10. But Archetype's claims neither arise from nor relate to those relationships.

Archetype's claims do not arise from BLG's Nevada contacts because there is no "proof that [Archetype's] claim came about because of [BLG's] in-state conduct." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021); *see also Menken v. Emm*, 503 F.3d 1050, 1058 (9th

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Cir. 2007) (explaining that a plaintiff trying to show claims "arise out of" forum-related conduct must "show that [it] would not have suffered an injury 'but for' [the defendant's] forum-related conduct"). Under Archetype's allegations, BLG's Nevada contacts are not the *cause* of its claims but rather the *result* of supposed misdeeds (which is, in any event, incorrect, as described below). *See* FAC ¶ 13.

Archetype's claims also do not relate to BLG's Nevada contacts. Because "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction," *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017), there ultimately must be "a close connection between contacts and injury" for a claim to relate to forum contacts, *see Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023). The "relate to" analysis "does not mean anything goes." *Ford Motor Co.*, 592 U.S. at 362. Instead, it "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* Thus, courts cannot read the "relate to" phrase with "too broad a scope," otherwise it would "risk 'collaps[ing] the core distinction between general and specific personal jurisdiction.'" *Yamashita*, 62 F.4th at 506.

Archetype's theory of personal jurisdiction is to gesture broadly at BLG's Nevada relationships and claim they are "part of the misappropriated trade secrets." *See* FAC ¶ 111. But Archetype cannot rely on abstraction to meet its burden, and its allegations do not show how its claims and BLG's Nevada contacts are connected. BLG established relationships with Nevada claimants and co-counsel through its own processes, and it has worked up its cases with Nevada claimants independent of anything Archetype alleges. Just as a battery producer was not subject to personal jurisdiction in Hawaii because it sold certain types of batteries in Hawaii that were different from the type of battery that caused the plaintiff's injury, BLG's VGA litigation relationships with Nevadans are not sufficient to establish personal jurisdiction here either. *See Yamashita*, 62 F.4th at 506–07. There is simply no "reason to believe that [BLG's] contacts have anything to do with [Archetype's trade secrets claims]." *Id.* at 507.

/ / /

/ / /

/ / /

8

**(i)     BLG's Nevada Contacts Were Developed Independently of Archetype.**

To the extent Archetype is claiming that its trade secrets formed any part of BLG's development of relationships with Nevada claimants or co-counsel, it is wrong.

1.      BLG did not steal any supposedly proprietary idea of identifying potential claimants in Nevada for mass tort litigation. *See* FAC ¶¶ 13, 37–38, 108. Not only does Archetype never so much as allege that its view on Nevadans as potential VGA claimants was shared with BLG at any point, but BLG has potential VGA claimants in 55 U.S. states and territories. Bullock Decl. ¶ 14. BLG's VGA operations are *nationwide*, and marketers and referral partners are the ones that identify claimant leads based on their own determinations. *Id.* ¶¶ 12, 17–18. BLG does not instruct them to target any specific location, nor does BLG direct solicitation into any specific location. *Id.* ¶ 13. The massive growth in BLG's claimant numbers is a result of BLG's own hard work and connections with marketers and other referral partners, not anything Archetype silently thought up. *Id.* ¶ 11–12, 17–18.

2.      The mere idea of partnering with co-counsel in the mass tort space is not unique, and BLG doing so does not relate to Archetype's claims. *See* FAC ¶¶ 13, 105–08. The co-counsel approach to mass tort litigation has been in use since well before Archetype even existed.[3] It is also an approach that Bullock has used in other mass tort litigations dating back to 2013, and pre-dating any interactions with Archetype. Bullock Decl. ¶ 15. Co-counsel leads are also, again, generated through marketers and referral partners. *Id.* ¶ 12. BLG has not taken any specific action to target Nevada co-counsel, and any Nevada co-counsel relationship is entirely independent of and unrelated to Archetype.

3.      Archetype also does not claim that BLG identified any Nevada claimant or co-counsel because of Archetype's trade secrets. While Archetype discusses Schneider's work on other mass tort

---

[3] *See, e.g.*, FAC ¶ 14 (Archetype founded in 2020); Byron G. Stier, *Resolving the Class Action Crisis: Mass Tort Litigation as Network*, 2005 Utah L. Rev. 863, 910 (2005) ("As with plaintiffs' counsel, the defense control structure is hub-and-spoke, with lead counsel at the hub, and local counsel acting as spokes."); Mark Crane & Christy J. Benton, *National and Local Counsel in Mass Tort Litigation Keys to a Productive Relationship*, 46 No. 5 DRI For Def. 8  (2004) (noting that in national counsel/local counsel relationships, "[l]ocal counsel will return the courtesy by promptly providing copies of his file and, if the case is already in progress, perhaps copies of summaries and correspondence to bring national counsel up to date").

dockets, there is no allegation connecting that work to BLG's Nevada contacts.[4] *See, e.g.*, FAC ¶¶ 3, 42–43, 88, 113–14. In reality, VGA litigation claimant qualification is *sui generis*, and BLG determined early on that mining other mass tort dockets for potential claimants was not a worthwhile pursuit. Bullock Decl. ¶ 17–18. That is why BLG partners with marketers and referral partners to identify potential VGA claimants. *Id.* None of BLG's VGA Nevada claimants or co-counsel was identified by "mining" other mass tort dockets. *Id.* ¶ 18; *see also* FAC ¶ 101.

At bottom, BLG worked on VGA litigations before ever interacting with Archetype, and its continuation of this work by forming relationships with Nevadans (and claimants across the whole nation) has nothing to do with Archetype or its claims. *See Yamashita*, 62 F.4th at 507.

**(ii)    BLG's Work for Nevada Claimants Is Not Connected to Archetype's Claims.**

This leaves Archetype's scattershot assertions of what Schneider allegedly did with its purported trade secrets after potential claimants were identified. But Schneider's unilateral activities are also unconnected to BLG's Nevada contacts. *See World-Wide Volkswagen*, 444 U.S. at 298 ("[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'"). Strikingly, the FAC does not contain any non-conclusory allegation of BLG actually *using* any of Archetype's purported trade secrets in connection with any Nevada contact. *See Walden*, 571 U.S. at 284 ("[The] relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State."). Archetype cannot reject an opportunity to work with BLG in June 2024, then deploy an "insider" to try to inject itself into the processes BLG was already undertaking and thereby manufacture personal jurisdiction.[5] *See* FAC ¶ 72; Bullock Decl. ¶ 32. None of BLG's alleged "suit-related conduct . . . create[s] a substantial connection with" Nevada. *Walden*, 571 U.S. at 284.

1.    While Archetype claims that Schneider shared Archetype's "alternative causation strategy," it does not claim that BLG ever used it, much less in connection with any Nevada claimant

---

[4] Archetype discusses claimants identified in connection with the Crouch Law Firm. *See* FAC ¶¶ 100–102. None of Crouch's VGA claimants reside in Nevada. Bullock Decl. ¶ 18.

[5] Archetype alleges that "BLG hired Schneider," but that is false. ECF No. 101 ¶¶ 86, 88. Schneider has never been employed by BLG. Bullock Decl. ¶ 34.

10

or co-counsel. *See* FAC ¶ 67.

2.      Similarly, while Archetype claims Schneider shared materials relating to claim evaluation and settlement valuation, BLG's claim workup and settlement valuation is based on its own independent work. *See, e.g., id.* ¶¶ 83–85, 88, 92. BLG pioneered VGA litigation in October 2023, and well before BLG first interacted with Archetype, BLG developed its own intake and evaluation criteria, requiring potential claimants to provide identifying and medical information that has always been independent of anything Archetype did. Bullock Decl. ¶¶ 9–10, 22–28. BLG also has leveraged Bullock's prior experience as a nurse and has consulted with medical experts to value claims based on anticipated treatment costs, wholly independent of Archetype. *Id.* ¶ 29. And while BLG used its own tier-ranking system for assessing claimants' injuries that it developed before interacting with Archetype, it has since moved to a different system entirely. *Id.* ¶ 28. BLG's criteria and evaluation metrics are what SimplyConvert aggregates for easy review and analysis, but it is not the complete process; there is nothing connecting BLG's actual work with SimplyConvert on the VGA litigations to Archetype's supposed trade secrets. *Id.* ¶ 26. Whatever materials Schneider may have shared or uploaded, they were separate from the actual VGA litigation intake, workup, and valuation BLG did and continues to do.

3.      Finally, Archetype's Defendant X settlement allegations do not establish personal jurisdiction. *See* FAC ¶¶ 118–26.  That settlement has never happened and no mediation is currently pending. Bullock Decl. ¶¶ 36–37. Archetype also does not claim that any of its supposed trade secrets and confidential information were actually approved by Defendant X or that they became part of the proposed settlement with Defendant X. *See* FAC ¶¶ 119, 125. Nor does Archetype allege that any Nevada claimant was a part of the Defendant X settlement discussions.

To the extent Archetype is claiming that a hypothetical, future settlement involving Nevada claimants could potentially use Archetype's trade secrets, *see, e.g., id.* ¶ 126, Article III's ripeness and standing requirements would prohibit such a speculative claim, *see, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient."); *50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*, 129 F.4th 1186, 1188 (9th Cir. 2025) ("For a case to be ripe,

11

it must present issues that are 'definite and concrete, not hypothetical or abstract.'"). This is particularly true here where there is no allegation that BLG actually *used* Archetype's trade secrets in connection with any settlement, the possibility of any settlement involving a Nevadan is speculative itself, and settlement requires independent third parties to also agree to the terms. *See Clapper*, 568 U.S. at 410 (A "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that the threatened injury must be certainly impending."); *id.* at 414 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

At bottom, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 582 U.S. at 265. Nothing about BLG's continuation of its pre-existing VGA litigation business with Nevada claimants and co-counsel relates to Archetype's claims. *See Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

### (c)    Archetype's Other Claims Do Not Arise Out of or Relate to BLG's Nevada Contacts.

Archetype fails to establish personal jurisdiction over BLG in connection with its claims for aiding and abetting, conversion, conspiracy, and intentional interference with economic advantages and prospective relationships. There is absolutely no "connection between [Nevada] and the specific claims at issue." *Bristol-Myers Squibb*, 582 U.S. at 265. These claims do not arise out of BLG's "contacts with the *forum*"; and there is no allegation of any "activity or . . . occurrence that [took] place in [Nevada]" relating to the claims whatsoever. *Id.* at 264.

For instance, there is no allegation that BLG, a Georgia LLC, and Schneider, a Texas resident, took any action together in Nevada, *see, e.g.*, FAC ¶¶ 8–9, 149; that BLG maintains any of Archetype's supposed trade secrets and confidential information in Nevada, *see id.* ¶ 194; that BLG entered into any purported scheme relating to Archetype in Nevada, *see id.* ¶ 202; or that BLG solicited or received any funding in Nevada, *see id.* ¶¶ 149, 206, 208–09.

To the extent the Court concludes there is personal jurisdiction over BLG with respect to the trade secrets claims, the Court should decline to exercise pendent personal jurisdiction as to any other

claim. *See Action Embroidery Corp.*, 368 F.3d at 1180–81 (explaining that courts have discretion to exercise pendent personal jurisdiction for claims that "arise[] out of a common nucleus of operative facts"). The Ninth Circuit adopted the pendent personal jurisdiction doctrine in 2004, *id.*, but the personal jurisdiction landscape has changed following the Supreme Court's 2017 *Bristol-Myers Squibb* ("*BMS*") decision. In *BMS*, the Supreme Court held that personal jurisdiction must be established for all plaintiffs, and similarities between nonresident plaintiffs' and resident plaintiffs' claims were an "insufficient basis" for exercising personal jurisdiction. 582 U.S. at 265. The Court made clear that there must be "a connection between the forum and the *specific claims at issue.*" *Id.* (emphasis added). Thus, "*BMS* teaches that a court must establish its jurisdiction over claims one at time." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 731 (7th Cir. 2024).[6]

While the Ninth Circuit has continued to recognize pendent personal jurisdiction since *BMS*, it has not squarely considered the doctrine in light of *BMS*. *See, e.g.*, *Nikola v. Foley*, 2026 WL 777686, at *4 (9th Cir. Mar. 19, 2026). Other circuit courts, however, have recognized that "no federal statute or rule authorizes" the doctrine and have called it into question post-*BMS*, particularly when there is no federal claim at issue that authorizes nationwide service of process. *Vanegas*, 113 F.4th at 727; *Canaday v. Anthem Cos.*, 9 F.4th 392, 401–02 (6th Cir. 2021). As the Supreme Court has clarified that specific jurisdiction requires "a connection between the forum and the *specific claims at issue,*" the Court should dismiss all other claims for lack of personal jurisdiction, even if it finds personal jurisdiction exists with respect to the trade secrets claims. *BMS*, 582 U.S. at 265 (emphasis added).

### (d)   The Exercise of Personal Jurisdiction Would Be Unreasonable.

The Court should also decline to exercise personal jurisdiction here because it would be unreasonable. Courts examine seven factors to determine reasonableness: "(A) the extent of the purposeful interjection into the forum state, (B) the burden on the defendant of defending in the forum, (C) the extent of conflict with the sovereignty of defendant's state, (D) the forum state's

---

[6] *See also* Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction After Bristol-Myers Squibb*, 11 Drexel L. Rev. 215, 282–83 (2018) ("Although it may have once been an open question, the [*BMS*] Court made clear that specific personal jurisdiction is a claim-specific inquiry. Consequently, pendent claim personal jurisdiction cannot survive under existing law.").

interest in adjudicating the dispute, (E) the most efficient judicial resolution of the controversy, (F) the importance of the forum to plaintiff's interest in convenient and effective relief, and (G) the existence of an alternative forum." *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985) (citation omitted).

Continuing this litigation in Georgia, where BLG has already filed suit, would result in the most efficient judicial resolution of the controversy between Archetype, BLG, and Schneider. The overwhelming gravity of Archetype's claims centers on Georgia, where BLG is located. Fundamentally, Archetype challenges what BLG has done in connection with the VGA litigations, and BLG's VGA operations and employees are centered in Georgia. Bullock Decl. ¶ 20. Thus, BLG's most critical witnesses and evidence are in Georgia. *Id.* Going forward with this case in Nevada would create interference with Georgia's sovereignty "and the right of [Georgia] courts to resolve disputes involving [Georgia]" companies. *Paccar Int'l*, 757 F.2d at 1065 ("One of the goals of minimum contacts analysis is 'to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'").

Conversely, while Archetype is organized in Nevada, its Nevada connections end there. *See* FAC ¶ 16. Archetype was initially organized in Florida, and even its Operating Agreement specifies that internal disputes are to be brought in Florida. *See id.*; ECF No. 38 at 2. Neither of its co-founding members are residents of Nevada and are instead residents of Texas. FAC ¶¶ 9, 14; Bullock Decl. ¶ 31. And Archetype is also 100% owned by a Delaware company. ECF No. 3 at 1. There are no allegations that any trade secret was created in Nevada, nor that any of Archetype's actual day-to-day operations take place in Nevada, nor that there are even any Archetype members or employees in Nevada, nor that there is so much as a physical address or phone number for Archetype in Nevada. In fact, Nevada is decidedly inconvenient to Archetype given that Schneider has argued for dismissal based on *forum non conveniens* (or, in the alternative, for transfer of this action to Florida) due to Archetype's Operating Agreement forum-selection clause.[7] ECF Nos. 38, 47.

_____

[7] BLG is not subject to personal jurisdiction in Florida, does not consent to jurisdiction in Florida, and does not waive any personal jurisdiction argument should this case be transferred to Florida.

14

While BLG would be burdened by having to litigate in Nevada rather than Georgia, there is no reason that Nevada would be more convenient for Archetype or result in more effective relief, especially since BLG's case against Archetype is already going forward. "The factors that deal with convenience and efficiency all strongly favor adjudicating this dispute in [Georgia]." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir. 1986).

There is also no real local interest in this case, other than the simple fact of Archetype's organization here; indeed, Nevada law may not even apply.[8] And finally, BLG's contacts with Nevada are unrelated to the claims asserted in this case. As a result, the exercise of personal jurisdiction here would not comport with fair play and substantial justice.

**B.      Dismissal Is Warranted Under Rule 12(b)(6) For Failure to State a Claim.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must also contain "more than labels and conclusions, and a formulaic recitation of a cause of actions elements." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Id.* at 555, 570. Factual allegations that "do not permit the court to infer more than the mere possibility of misconduct," and that do not actually "show[]" that the defendant acted unlawfully, cannot sustain a claim. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, an "obvious alternative explanation" left unrebutted by the factual allegations will doom a complaint. *Twombly*, 550 U.S. at 567–69. In addition to the jurisdictional defects set forth above, Archetype's FAC fails to satisfy the requisite pleading standards under Rules 8 and 9, thereby warranting dismissal under Rule 12(b)(6).

---

[8] The Court must apply Nevada's choice-of-law rules to determine which law applies to Archetype's state law claims. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010) ("Federal courts must apply state substantive law to state law claims, including the forum state's choice of law rules."). Nevada applies the Restatement (Second) of Conflict of Laws' most significant relationship test to determine what law to apply in tort cases. *Gen. Motors Corp. v. Eighth Jud. Dist. Ct.*, 134 P.3d 111, 116 (Nev. 2006). The actual events alleged in support of Archetype's claims have nothing to do with Nevada, and the Court may potentially be required to apply law that a Georgia court would be more familiar with. Although BLG addresses below Archetype's claims under Nevada law, BLG reserves the right to assert that another state's laws apply if this case proceeds.

MCDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### 1.    Archetype Fails to State a Trade Secrets Claim.

Archetype claims that BLG violated state and federal trade secrets statutes. FAC ¶¶ 169–91. Under the federal Defend Trade Secrets Act ("DTSA"), "a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1150 (S.D. Cal. 2022). Under Nevada's Uniform Trade Secrets Act ("NUTSA"), the elements "include: (1) a valuable trade secret; (2) misappropriation of the trade secret . . . ; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). Archetype's claims fail because Archetype does not adequately allege that BLG misappropriated any trade secret.

*First*, under DTSA and NUTSA, trade secret protection only applies when the owner has taken reasonable measures to keep the information secret. *See* 18 U.S.C. § 1839(3)(A); NRS 600A.030(5)(a)(2). Mayer, however, specifically approved of Schneider entering into the JVA with BLG, which provided that Schneider would, among other things, "[p]repare a settlement framework that maximizes the value of the overall [VGA] litigation instead of individual claimants," "provid[e] strategic modeling" and "[i]dentify and analyze negotiating points."[9] FAC ¶¶ 72, 78. Mayer did this because having "Schneider as an insider would . . . help Archetype stay involved with BLG's litigation funding and VGA claims review process." *Id.* ¶ 72. After authorizing Schneider to engage in these activities—so that it could benefit from an inside view of BLG's operations—Archetype cannot claim it took reasonable measures to protect the information from disclosure to BLG. That Archetype never intended to protect any supposed trade secret is further established by Archetype's failure to take any action after Schneider allegedly informed Mayer that Schneider had shared Archetype's confidential alternative causation analysis. *Id.* ¶ 68. The "obvious alternative explanation" here is that Archetype intended for Schneider to share Archetype's supposed trade

---

[9] While Archetype claims that "Schneider said he could not show Mayer the agreement as it was privileged," Archetype does not claim that it did not have access to the JVA, which it quotes in the FAC. *See* ECF No. 101 ¶ 78. Notably, Archetype's security measures included "screen recording, email logs, threat logs, [and] keystroke logs." *Id.* ¶¶ 55–56.

secrets so Schneider could ingratiate himself to BLG and steal BLG's own trade secrets.[10] *See Twombly*, 550 U.S. at 567–68.

*Second*, Archetype fails to allege that BLG misappropriated any trade secret. In essence, Archetype is alleging indirect misappropriation by BLG through Schneider, *see id.* ¶¶ 175, 186, which, under both the DTSA and NUTSA, requires Archetype to establish that BLG "kn[ew] or ha[d] reason to know" that the information was improperly obtained, *see* 18 U.S.C. § 1839(5); NRS 600A.030(2); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 78 (N.D. Cal. 2020). Archetype, however, only offers insufficient conclusory allegations and formulaic recitations to support BLG's purported knowledge that any trade secret was improperly obtained. *See Twombly*, 550 U.S. at 555; *see also, e.g.*, FAC ¶¶ 82, 175, 186. These conclusory statements are "not entitled to the presumption of truth" and must be "discount[ed]" "before determining whether [Archetype's] claim[s] [are] plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *see also Iqbal*, 556 U.S. at 679 ("[C]onclusions[] are not entitled to the assumption of truth" and "must be supported by factual allegations."). Outside of conclusory allegations, there is no "factual content that allows the court to draw the reasonable inference that" BLG knew Schneider was impermissibly sharing any Archetype trade secret. *Iqbal*, 556 U.S. at 678.

Even more problematically, Archetype's own allegations establish the opposite. There is no allegation that BLG ever knew that Archetype sought to offer any service outside of litigation funding and therefore would have any supposed trade secret concerning mass tort litigations. In fact, there is no allegation that Archetype even provided *anyone* with services other than litigation funding. There is also no allegation that Archetype was in the business of law in any capacity; indeed, it alleges that "Schneider was never authorized to practice law for Archetype and admitted he 'wasn't practicing law and working in finance' while at Archetype," and Archetype's full name is Archetype *Capital Partners*, LLC. *See* FAC ¶ 18. Further, Mayer specifically approved of Schneider entering into the

---

[10] In its order on Archetype's preliminary injunction motion, the Court found that Archetype attempted to keep its trade secrets secret. ECF No. 48 at 14 n.6. However, the Court focused on security and data privacy controls, and the operating agreement that safeguarded trade secrets. *Id.* The Court did not address that Mayer approved of Schneider's work with BLG. *See* FAC ¶¶ 72, 78.

JVA with BLG, which destroys any inference that Archetype did not approve of Schneider's work with BLG. *See id.* ¶¶ 72, 78.

Schneider entered the JVA in his individual capacity as co-settlement counsel. *See id.* ¶¶ 18, 72, 78. Schneider represented to BLG that he would "use [his] private settlement comparable from [his] database as a cross check." *Id.* ¶ 73. Schneider further sent memoranda that "made no reference to Archetype." *Id.* ¶ 85. Schneider represented that he was individually working on mass tort overlap. *See id.* ¶ 114. Schneider also told Mayer that "he provided [BLG] with Archetype's confidential" alternative causation analysis, but there is no allegation that Mayer told BLG that information was confidential. *Id.* ¶ 68. And Schneider was a member of Archetype, so BLG would have no reason to know that he was sharing materials he should not have and harming his own company. *Id.* ¶ 9. Against this backdrop, Archetype's claims are not plausible and must be dismissed. *Iqbal*, 556 U.S. at 678.

**2.      Archetype's Non-Misappropriation Claims Are Precluded to the Extent They Are Based on Allegedly Misappropriated Trade Secrets and Confidential Information.**

NRS 600A.090 "precludes a plaintiff from bringing a [state] tort or restitutionary action 'based upon' misappropriation of a trade secret beyond that provided by the [N]UTSA." *Fortunet, Inc. v. Coronel*, 2024 WL 3841864, at *1 (Nev. Aug. 14, 2024) (unpublished disposition) (quoting *Frantz*, 999 P.2d at 357). Thus, all of Archetype's other state law claims are precluded to the extent they are "based upon" the same misappropriation of trade secrets and confidential information[11] allegations in its NUTSA claim. *Id.* at *2 (concluding that conversion and civil conspiracy claims were partially precluded where "'based upon' the same allegations as [the plaintiff's] [N]UTSA claim"); *see also Frantz*, 999 P.2d at 358 (explaining that claims of "(1) misappropriation of confidential information, (2) breach of fiduciary duty, (3) intentional interference with contractual relations, (4) intentional interference with prospective advantage, (5) the tort of the breach of the covenant of good faith and fair dealing, (6) civil conspiracy, and (7) unjust enrichment" should have been precluded "because they arose from a single factual episode, namely misappropriation of bidding and pricing information").

---

[11] Archetype claims its "Trade Secrets and Confidential Information" are "trade secrets." FAC ¶¶ 174, 186.

18

### 3. Archetype Fails to State a Claim for Aiding and Abetting a Breach of Fiduciary Duty.

Archetype claims that BLG aided and abetted Schneider in breaching fiduciary duties he allegedly owed to Archetype. *See* FAC ¶¶ 145–53. This claim is precluded as it is premised on Archetype's allegations of misappropriated trade secrets and confidential information. *See* § IV.B.2, *supra*; *see also* FAC ¶¶ 146–47.

Even assuming there is some non-trade-secret basis for Archetype's claim, it would still fail. Aiding and abetting a breach of a fiduciary duty "requires that four elements be shown: (1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4) the breach of the fiduciary relationship resulted in damages." *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011). Archetype fails to adequately allege that there was a breach or that BLG knowingly participated in the breach.

To the contrary, Archetype had full knowledge, and indeed approved, of Schneider's work with BLG. *See* FAC ¶ 72. Specifically, Mayer approved of Schneider "work[ing] with Tina in the settlement room to make sure she got a good deal from the named defendants in that case," and having "Schneider as an insider" to "help Archetype stay involved with BLG's litigation funding and VGA claims review process." *Id.* ¶¶ 14–15, 72. Archetype also had access to the JVA, which provides that, among other things, Schneider would "[p]repare a settlement framework that maximizes the value of the overall [VGA] litigation instead of individual claimants," "provid[e] strategic modeling" and "[i]dentify and analyze negotiating points." *Id.* ¶ 78. The FAC's allegations completely negate any inference that BLG knowingly participated in any breach. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (Courts are not "required to accept as true . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Archetype offers nothing to plausibly suggest that BLG knew that Archetype, counterfactually, did not approve of BLG and Schneider's work together or the terms of the JVA. And the types of activities Archetype alleges are consistent with the arrangement Mayer specifically approved of or are inadequately alleged.

Archetype claims that Schneider and BLG "pursu[ed] opportunities that belonged to Archetype " and "deliberately excluded Archetype from the VGA litigation market." FAC ¶ 149.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

These allegations appear to be based on BLG's development with SimplyConvert of a case management system and platform. *See id.* ¶¶ 89, 90. Archetype fails to explain how BLG choosing to partner with SimplyConvert was knowing participation in any breach of Schneider's duty, particularly when Archetype does not allege that Schneider had any say in BLG's choice of SimplyConvert, that Archetype ever had a functional case management system, or that Archetype ever offered to provide case management services to BLG. Likewise, Archetype fails to explain how BLG's entering into co-counsel relationships with other law firms was knowing participation in any breach of Schneider's duty to a non-law firm that could not form co-counsel relationships. Next, Archetype information allegedly disclosed by Schneider was consistent with the arrangement Mayer approved of. *See id.* ¶¶ 72, 78, 149. Finally, while Archetype claims that BLG solicited Archetype's "actual or potential customers and investors," Archetype does not account for the "obvious alternative explanation" that the mass tort field is comprised of a small group of hedge funds, law firms, and vendors who are frequently introduced to one another and well known in the industry; any solicitation by BLG was unconnected to any supposed breach and was instead the result of BLG broadly soliciting companies from a small pool of well-known industry vendors to participate in the VGA litigation. *See Twombly*, 550 U.S. at 567–68.  On these facts, Archetype fails to adequately allege the elements of an aiding and abetting claim.

### 4.    Archetype Fails to State a Conversion Claim.

Archetype asserts a conversion claim based on BLG's supposed taking of Archetype's trade secrets and confidential information. FAC ¶¶ 192–99. That claim is squarely precluded by NRS 600A.090. *See* § IV.B.2, *supra*.

Even if it were not, Archetype's claim would still fail. "Conversion is 'a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights.'" *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (citation omitted). While conversion can apply to intangible personal property, a cognizable property right only "exists when (1) there is an interest capable of precise definition, (2) the interest is capable of exclusive possession or control, and (3) the putative owner has established a legitimate claim to exclusivity." *M.C. Multi-Fam. Dev., LLC v.*

*Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008). However, "there is no liability for conversion if possession was assented to, 'unless the assent was obtained by duress or from one lacking capacity to consent or was obtained or acted upon fraudulently.'" *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023). As described in Section IV.B.2, *supra*, Schneider voluntarily provided information to BLG, and Mayer assented to Schneider and BLG's working arrangement. Archetype chose to try to gain some inside advantage through Schneider and cannot now be heard to claim it did not assent to BLG's supposed possession of its exclusive property.

### 5. Archetype Fails to State a Conspiracy Claim.

Archetype claims that Schneider and BLG engaged in a civil conspiracy to harm Archetype. *See* FAC ¶¶ 200–04. This claim is precluded as it premised on allegations of purported misappropriation of Archetype's trade secrets and confidential information. *See* § IV.B.2, *supra*; *see also* FAC ¶¶ 2–3, 75, 87, 97, 202.

Even if that were not true, Archetype's civil conspiracy fails all the same. None of Archetype's claims underlying the conspiracy claim can survive, and its conspiracy claim thus also cannot survive. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Further, an intent to harm is a critical and necessary component of a civil conspiracy claim. *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998). But apart from conclusory assertions, Archetype offers no factual allegation supporting any inference that BLG intended to harm Archetype, particularly as there are no non-conclusory allegations that BLG knew Archetype had any trade secret concerning VGA litigation. At absolute best, Archetype alleges that BLG hoped for personal gain, but that is not the intentional harm necessary to state a claim for civil conspiracy. BLG may have personal gain with any successful litigation or venture, and that is not proof of an intent to harm Archetype. Archetype's "labels," "conclusions," and "formulaic recitation" of the elements of conversion are insufficient. *Twombly*, 550 U.S. at 555.

### 6. Archetype Fails to State an Intentional Interference Claim.

Finally, Archetype asserts a claim for intentional interference with its economic advantage and its prospective relationships with third parties. FAC ¶¶ 169-76. Again, this claim is precluded as it is based on the allegations of purported misappropriation of Archetype's trade secrets and

21

confidential information. *See* § IV.B.2, *supra*; *see also* FAC ¶¶ 27, 81, 208.

The claim also fails independently. The elements for an intentional interference with prospective business advantage claim are "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Consol. Generator-Nev.*, 971 P.2d at 1255. The elements for intentional interference with contractual relations are "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

As with Archetype's civil conspiracy claim, the FAC is devoid of any non-conclusory allegation that BLG intended to harm Archetype or disrupt any of its contractual relationships. But the FAC's failings do not stop there. The FAC offers only conclusory allegations of any prospective relationship between Archetype and any third party, and certainly no non-conclusory allegation that harm in fact resulted. Nor does the FAC allege how any existing contractual relationship was actually disrupted. Just because customers and investors partnered with BLG, including as litigation co-counsel and referring counsel, Archetype offers nothing to suggest it follows that Archetype was prevented from partnering with those same customers and investors for purposes of its actual non-lawyer services or that its existing contracts were disturbed. Likewise, Archetype offers nothing to explain how BLG's search for funding from other sources *after being rejected by Archetype* could harm Archetype. Moreover, Archetype appears to focus on BLG supposedly contacting Archetype's "actual and potential customers and investors in efforts to obtain litigation funding," FAC ¶ 208, but that says nothing of BLG's actual knowledge of Archetype's relationships; the "obvious alternative explanation" is that BLG independently reached out to players in the small pool of mass tort litigation, and some just happened to work with Archetype, *see Twombly*, 550 U.S. at 567-68; *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) ("In assessing the plausibility of an inference, we 'draw on [our] judicial experience and common sense,' and consider 'obvious alternative explanations.'" (citations omitted)).

At bottom, Archetype's claim is essentially that BLG should be held liable any time it partners with a third party Archetype works with, whether BLG knows of Archetype's relationship with those parties or not and regardless of whether Archetype actually loses out on a prospective relationship or has an agreement disturbed. That is not enough to state any claim for intentional interference.

**C.      Archetype's Claims Against BLG Should Be Dismissed With Prejudice.**

The Court should exercise its "particularly broad" discretion to deny any request for leave to amend because Archetype "has previously filed an amended complaint." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004). Archetype has already "had ample opportunity . . . to address the deficiencies in its pleading," particularly as BLG filed a motion to dismiss the initial complaint, and BLG should not be forced to continue litigating Archetype's futile claims. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 114, 1174 (9th Cir. 2017); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend.").

**V.      CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

Dated: April 7, 2026.                          McDONALD CARANO LLP


By: */s/ Chelsea Latino*
    Pat Lundvall (NSBN 3761)
    Chelsea Latino (NSBN 14227)
    Laena St-Jules (NSBN 15156)
    2300 West Sahara Avenue, Suite 1200
    Las Vegas, Nevada 89102
    plundvall@mcdonaldcarano.com
    clatino@mcdonaldcarano.com
    lstjules@mcdonaldcarano.com

    *Attorneys for Defendant Bullock Legal Group, LLC*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of McDonald Carano LLP, and that on April 7, 2026, I caused a true and correct copy of the foregoing **DEFENDANT BULLOCK LEGAL GROUP, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** to be electronically filed with the Clerk of the Court and served via the United States District Court CM/ECF system on all parties or persons requiring notice. I further certify that complete copies of all sealed exhibits were served on the parties via email, as follows:

Kevin N. Anderson (kanderson@fabianvancott)
Hilary R. Adkins (hadkins@fabianvancott.com)
FABIAN VANCOTT

Joseph Y. Ahmad (joeahmad@azalaw.com)
John Zavitsanos (jzavitsanos@azalaw.com)
Weining Bai (wbai@azalaw.com)
Cameron A. Byrd (cbyrd@azalaw.com)
Justin Kenney (jkenney@azalaw.com)
Davis Metzger (dmetzger@azalaw.com)
Nicholas E. Petree (npetree@azalaw.com)
Paul Galante (pgalante@azalaw.com)
AHMAD, ZAVITSANOS & MENSING, PLLC

*Attorneys for Plaintiff*

D. Chris Albright (dca@albrightstoddard.com)
ALBRIGHT STODDARD WARNICK & ALBRIGHT

Mazin A. Sbaiti (mas@sbaitilaw.com)
Kevin N. Colquitt (knc@sbaitilaw.com)
SBAITI & COMPANY PLLC

*Attorneys for Defendant Andrew Schneider*

  /s/ Beau Nelson
Beau Nelson

24

**INDEX OF EXHIBITS**

| Ex. | Description | Pages |
|:---:|:---|:---:|
| 1 | Declaration of Tina Bullock | 6 |
| 2 | VGA Intake (September 2023) | 18 |
| 3 | VGA Intake (March 2024) | 12 |
| 4 | VGA Criteria (October 2023) | 2 |
| 5 | VGA Criteria (June 2024) | 1 |
| 6 | VGA Intake (October 2025) | 4 |
| 7 | Complaint, *Bullock Legal Group, LLC v. Archetype Capital Partners, LLC*, 26CV02359 (Ga. Sup. Ct.) | 23 |

25