# EXHIBIT 7

Complaint, *Bullock Legal Group, LLC v. Archetype Capital Partners, LLC*, 26CV02359 (Ga. Sup. Ct.) (March 20, 2026)

# EXHIBIT 7

⊜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**26CV02359**
**HENRY R. THOMPSON**
**MAR 20, 2026 05:15 PM**

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

**IN THE SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| BULLOCK LEGAL GROUP, LLC and TINA BULLOCK,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ARCHETYPE CAPITAL PARTNERS, LLC; DOUGLAS MAYER; and ANDREW SCHNEIDER,<br><br>　　　　Defendants. | CIVIL ACTION FILE<br><br>NO.: _____ |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Bullock Legal Group, LLC ("BLG") and Tina Bullock ("Ms. Bullock") (collectively, "Plaintiffs") file this Complaint for damages and injunctive relief against Defendants Archetype Capital Partners, LLC, ("Archetype"); Douglas Mayer ("Mayer"); and Andrew Schneider ("Schneider") (collectively, "Defendants"), stating as follows:

## INTRODUCTION

This case involves Defendants' willful and malicious theft of BLG's confidential and trade secret data compilation in order to extort Plaintiffs for millions of dollars. The theft was perpetrated by a conspiracy between Schneider – an attorney turned corporate mole who was at the time restricted from the full practice of law by the New Jersey Bar – at the behest of Archetype – a shadowy company incorporated in Nevada with no physical address – run by Mayer, a Texan who makes his living running extortion schemes through shell corporations.

Ms. Bullock is an attorney who works to bring justice to children and young adults victimized and led to addiction by video game developers seeking maximum profits. She met Schneider and Mayer through their company, Archetype, which purported to be a litigation finance company. While acting like a friend and colleague, Schneider used software loaded onto his

computer to record private conversations, capture screenshots of proprietary information, and download and exfiltrate trade secret information for the benefit of himself, his partner, Mayer, and their fledgling company, Archetype.

Once the theft was accomplished, Defendants continued their heel turn and began to extort Plaintiffs through demands for millions of dollars and frivolous litigation. Now, Ms. Bullock and BLG seeks to justly and properly take back what is rightfully hers, restore her good name, and hold Defendants accountable for their nefarious and predatory deeds.

## JURISDICTION AND VENUE

1.

Plaintiff Bullock Legal Group is a law firm and limited liability company organized under the laws of the State of Georgia, with its principal place of business located at 3662 Cedarcrest Road, Suite 320, Acworth, Georgia.

2.

Plaintiff Tina Bullock is a licensed attorney and managing partner of Bullock Legal Group. She is a resident of the State of Georgia.

3.

Defendant Archetype Capital Partners, LLC is a limited liability company organized under the laws of the State of Nevada, with no identified principal place of business. Archetype can be served via its registered agent, Capitol Corporate Services, Inc., at 716 N. Carson St. #B, Carson City, Nevada.

4.

Defendant Douglas Mayer is the co-founder, manager, and CEO of Archetype and on information and belief resides at 19926 Hickory Wind Drive, Humble, TX 77346.

-2-

5.

Defendant Andrew Schneider is a licensed attorney in the State of New Jersey and co-founder of Archetype who, on information and belief, resides at 19433 Villa Mesa Drive, New Caney, Texas 77357.

6.

Defendants are subject to the jurisdiction of this Court pursuant to Georgia's Long Arm Statute, O.C.G.A. § 9-10-91, because they have committed tortious acts and tortious injuries within this State.

7.

This Court is a proper venue for this matter under O.C.G.A. § 9-10-93, because this is the County where the business was transacted and/or tortious conduct occurred and caused Plaintiffs harm.

## FACTS AND BACKGROUND

8.

Ms. Bullock is a mother, attorney, and former nurse who has developed a passion and a thriving practice fighting for children and young adults who suffer from video game addiction ("VGA").

9.

Prior to becoming a member of the bar, Ms. Bullock was a registered nurse for 23 years.

10.

Even as a nurse, Ms. Bullock was heavily involved in litigation, gaining extensive experience proving medical injuries, economic valuation, and causation in connection with medical injuries underpinning both medical malpractice and mass tort actions.

-3-

11.

Along with a nursing degree and law degree, Ms. Bullock has an accounting degree with a minor in statistics.

12.

BLG, formerly known as Bullock Ward Mason, was founded by Ms. Bullock on August 11, 2022, in Cobb County, Georgia as a medical malpractice and mass tort law firm.

13.

In 2022, Ms. Bullock learned from her son that video game companies were recruiting from graduate school psychology classes in an effort to make their games as addictive as possible.

14.

Ms. Bullock had also personally experienced the effects of excessive video game play on her family and friends.

15.

Inspired to help families impacted by VGA, beginning in 2022, Ms. Bullock began researching theories of liability, injuries and hiring experts for video game addiction ("VGA") litigation.

16.

Ms. Bullock and BLG pioneered the concept of VGA lawsuits in the United States, filing the first such lawsuit on October 30, 2023.

17.

In advance of filing that first VGA lawsuit, BLG solicited numerous lenders to obtain funding to cover the firm's operating costs and BLG secured its first round of funding from a third-party lender in 2022.

-4-

18.

Because of the novelty and attention brought to BLG by the VGA litigation, BLG's caseload quickly began to grow.

19.

BLG began to seek additional litigation funding, a need that continued to grow as BLG's docket of cases across different case types continued to rapidly expand.

20.

In May 2024, Plaintiffs were introduced to Schneider and Archetype, a litigation funding brokerage service, who Plaintiffs were told could potentially assist Plaintiffs in securing additional litigation funding.

21.

Unbeknownst to Plaintiffs, at that time Archetype had only ever brokered a single litigation funding deal and lacked the experience necessary to secure the funding that Plaintiffs required.

22.

In furtherance of the potential relationship, BLG and Archetype executed a Non-Disclosure Agreement ("NDA") for the sole purpose of facilitating the sharing of BLG's confidential information in its request for brokerage services from Archetype.

23.

During the May 2024 introduction, Schneider declined Plaintiffs' request for brokerage services and told Ms. Bullock that he believed VGA litigation was too novel to secure funding.

24.

Plaintiffs almost immediately secured funding from other lenders without the brokering assistance of Archetype.

## BLG CONTRACTS WITH SIMPLYCONVERT AND BLUEKEY TEK TO DEVELOP VGA MASS TORTS ANALYSIS

25.

Based on her experience working on mass torts, Ms. Bullock understood the importance of monitoring other VGA litigation, tracking her own growing docket of cases, and synthesizing the data to support case valuations and damages calculations.

26.

As part of her efforts to track and synthesize this information, Ms. Bullock was introduced to SimplyConvert's Instant Case Evaluator on November 4, 2022.

27.

SimplyConvert is a company that assists law firms engaging in mass tort litigation with client relationship management, data management, referral platforms, automated client intake, client portals, and reporting analytics and insights.

28.

Ms. Bullock reached out to the owner of SimplyConvert in 2023 after seeing the data mapping SimplyConvert had built for litigation involving Camp LeJune to discuss building something similar for VGA.

29.

At the same time, BLG had been searching for a solution to obtain superior gamer tag information since the inception of its VGA practice.

30.

BlueKey Tek ("BlueKey") has developed technology to gather the most complete and accurate gamer statistics available on the market.

31.

BLG hired BlueKey to gather individual gamer statistics to determine whether that individual meets the causation requirements to qualify as a potential VGA plaintiff.

32.

BlueKey further provides an allocation of playing time for each individual, a list of games each individual played, and the corresponding company/defendant that created said game(s).

33.

BLG and BlueKey worked with Simply Convert to utilize and customize their platforms for BLG's VGA case needs.

34.

BLG executed an agreement with SimplyConnect to utilize its platforms for VGA cases on November 8, 2024.

35.

BLG also entered into a Services Contract with BlueKey with an effective date of December 2, 2024.

36.

As BLG's VGA practice continued to rapidly expand, BLG used the technology created by SimplyConvert and BlueKey to develop a statistical data set of VGA claims which, on information and belief, is the largest of its kind in the world (the "BLG Data Set").

37.

The BLG Data Set synthesizes millions of data points derived from the data of hundreds of thousands of VGA claimants – a unique set of data that is proprietary, secret, and invaluable to

BLG's ability to maintain its position as an industry leader in VGA litigation – which BLG considers and treats as trade secret information.

38.

Nobody outside of BLG is authorized to access the BLG Data Set.

39.

SimplyConvert and BlueKey are contractually obligated to keep the information contained in the BLG Data Set confidential and not disclose any data without BLG's express consent. *See* **Exhibits 1 and 2** attached hereto.

40.

BLG has taken necessary steps to maintain the secrecy of the BLG Data Set, including retaining a cybersecurity firm and using SOC-2 compliant case management software.

41.

The client data in the BLG Data Set – including client medical and school records – was crucial for the development of the damage model and workflows of VGA litigation.

42.

The sheer volume of case data from the BLG docket provided the modeling for epidemiologists hired by Bullock to provide expert testimony that the injuries suffered by BLG clients were specifically caused by VGA.

43.

As a result of her ever expanding VGA practice, Ms. Bullock has become a leading voice in the industry, speaking on multiple panels before plaintiffs' firms, being interviewed for Netflix documentaries, and appearing on Good Morning America on November 20, 2023.

44.

The BLG Data Set and Ms. Bullock's reputation have set Plaintiffs apart in the industry, and the integrity of both are a vital component of the continued success of BLG's VGA practice.

### DEFENDANTS' SCHEME TO INFILTRATE BLG

45.

Unbeknownst to Plaintiffs at the time, Defendants had enacted a plot to obtain the BLG Data Set compiled and synthesized by Plaintiffs to offer the data for sale and eventually extort Plaintiffs for millions of dollars.

46.

On information and belief, Schneider and Mayer conspired to have Schneider offer to assist BLG as settlement co-counsel on VGA cases, and, after gaining access to BLG's data, secretly export the data and load the same to Archetype systems.

47.

In September 2024, Schneider approached Plaintiffs purporting to offer to serve as settlement co-counsel on VGA cases, falsely claiming that he was lead counsel in a prominent mass tort settlement, and that he was key in drafting the Master Settlement Agreement for that settlement.

48.

In connection with his offer, Schneider represented to BLG that he no longer was employed by or held an interest in Archetype.

49.

Needing additional assistance with its growing docket, and believing that Schneider was no longer associated with Archetype, BLG agreed to have Schneider serve as settlement co-counsel, entering into a joint venture agreement on September 27, 2024.

50.

Upon entering the agreement, Ms. Bullock offered Schneider a BLG laptop on which to conduct any BLG-related business; however, Schneider insisted on using his own personal laptop.

51.

Schneider knew that Bullock used a cybersecurity company to ensure that all BLG computers and laptops were secure, and at the direction of Meyer, Schneider refused to use a BLG-issued laptop, assuring BLG that his personal laptop was secure.

52.

Unbeknownst to Plaintiffs, Schneider had installed Hexanode and Teramind spyware on Archetype laptops, including Schneider's own laptop.

53.

Hexanode and Teramind allowed Archetype to record and collect keystrokes, intercept phone calls, and take videos of any party who used an Archetype computer or laptop.

54.

Without permission from BLG, Schneider began to record Zoom calls, phone calls, and emails with clients, opposing counsel, and vendors.

55.

Among other things, Schneider took from BLG systems:

- BLG strategy documents;

-10-

- Confidential drafts of BLG consolidated financial statements;

- Return-on-investment analyses;

- Pricing proposals;

- Litigation-specific information;

- Confidential and proprietary information concerning BLG's vendors;

- Confidential and proprietary information concerning BLG's law firm referral partners;

- Confidential and proprietary information concerning BLG's law firm past and present banking partners;

- Client lists;

- BLG and Tina Bullock's private personal data;

- Plaintiffs' compensation information;

- BLG's confidential attorney work product; and

- pending projects and proposals.

56.

Schneider also secretly exported BLG's data stored on SimplyConvert.

57.

Schneider took these steps at the direction of Mayer.

58.

Once exported, Schneider uploaded the stolen data to Archetype systems and worked with Mayer to give the false appearance that Defendants had developed the stolen data independently.

59.

On information and belief, Defendants had no expertise or access to client records to develop the dataset that Plaintiffs worked with SimplyConvert and BlueKey to compile and synthesize.

**DEFENDANTS' SCHEME TO EXTRACT MONEY FROM PLAINTIFFS**

60.

On February 18, 2025, Archetype sent BLG and Schneider a letter demanding they cease "the unauthorized use of Archetype's proprietary business models, financial methodologies, and litigation funding strategies by Bullock Legal Group ('BLG') and Mr. Schneider." *See* Exhibit 3 attached hereto.

61.

In the demand letter, Archetype admitted that it had accessed BLG's confidential client records, BLG's emails with third party vendors, and BLG financial information.

62.

Archetype demanded payment of $20 million, which Plaintiffs refused.

63.

On September 8, 2025, Archetype filed a Complaint in the United States District Court for the District of Nevada, naming BLG and Schneider as defendants, and demanding $100 million in damages.  *Archetype Capital Partners, LLC v. Bullock Legal Group, LLC, et al.*, Case No. 2:25-cv-01686-GMN-BNW (D. Nev. 2025).

64.

On information and belief, Schneider was named as a defendant in order to maintain the secrecy of their scheme. *See* Exhibit 4 (Schneider Timeline admitting he is arguably still a 51%

shareholder in Archetype since the promissory note to redeem his shares were never paid to Schneider) attached hereto. In essence, Schneider sued himself to create the ruse that he is a defendant in Nevada.

65.

In tandem with the litigation, Archetype began a campaign to discredit and destroy Plaintiffs' reputations.

66.

Archetype contacted vendors and referring law firms in order to pressure them to stop working with Plaintiffs.

67.

Archetype also contacted the media and made false statements concerning Plaintiffs which have severely damaged the reputations of BLG and Ms. Bullock.

68.

Ultimately, BLG was dismissed as a defendant on December 5, 2025. However, the damage to Plaintiffs' reputation was already done.

69.

Plaintiffs are now threatened with the loss of current clients, referral partners, vendor relationships, income, and goodwill in amounts that may be impossible to determine.

70.

On information and belief, Defendants have made similar attempts to extort at least two other hedge funds with similar bogus claims, demanding identical payouts of $20 million from those firms.

71.

On information and belief, Defendants have secured third party litigation funding to bring this frivolous litigation against BLG and extort multiple hedge funds.

72.

On information and belief, Defendants have a pattern of securing third party litigation funding to support frivolous litigation, including previously soliciting offers from TRGP and/or Amicus to fund frivolous litigation against Contingency Capital.

73.

On information and belief, Archetype now operates under a business model to secure third party litigation funding to support frivolous litigation.

## COUNT I

**Violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq.**

74.

Plaintiffs hereby re-allege and incorporate paragraphs 1 through 68 by reference.

75.

Plaintiffs have developed confidential information, including but not limited to:

- BLG's comprehensive data set maintained within SimplyConvert;

- BLG strategy documents;

- Confidential drafts of BLG consolidated financial statements;

- Return-on-investment analyses;

- Pricing proposals;

- Confidential and proprietary information concerning BLG's vendors;

-14-

- Confidential and proprietary information concerning BLG's law firm referral partners;

- Confidential and proprietary information concerning BLG's law firm past and present banking partners;

- Client lists; and

- Plaintiffs' compensation information.

76.

Plaintiffs derive actual and potential economic value from the information because it is not generally known to others and is not readily ascertainable by proper means by others, including its competitors, who would derive economic value from its use.

77.

Plaintiffs took reasonable steps to secure the confidentiality of this information.

78.

Plaintiffs' confidential information thus includes material that constitutes trade secrets under the Georgia Trade Secrets Act.

79.

Defendants acted without authorization and misappropriated Plaintiffs' trade secrets.

80.

Defendant's misappropriation of Plaintiffs' trade secrets was accomplished by theft and by taking advantage of the trust and confidence Plaintiffs placed in Schneider as settlement co-counsel.

81.

Defendants downloaded and stored Plaintiffs' confidential information and trade secrets from devices that have been used and kept in Georgia.

82.

Defendants were not authorized to acquire, retain, or use Plaintiffs' trade secrets, and their acquisition, retention, and use of the trade secrets was improper.

83.

Defendants used Plaintiffs' trade secrets for their own benefit without the express or implied consent of Plaintiffs, the owners of the trade secrets.

84.

Defendants' misappropriation and wrongful possession of Plaintiffs' trade secrets is ongoing and continuing.

85.

Plaintiffs have suffered compensable harm as a result of Defendants' misappropriation, including damage to Plaintiffs' business reputation, expenses incurred in investigating and prosecuting the theft of its trade secrets, and lost profits associated with lost clients and law firm referral sources.

86.

Defendants' misappropriation of Plaintiffs' trade secrets was willful and malicious, such that Plaintiffs is entitled to damages and attorney's fees.

-16-

## COUNT II

### Computer Theft, O.C.G.A. § 16-9-93 et seq.

87.

Plaintiffs hereby re-allege and incorporate paragraphs 1 through 81 by reference.

88.

In further of Defendants' scheme, Defendant Schneider accessed BLG's SimplyConvert database containing the BLG Data Set.

89.

Defendant Schneider's access was beyond the access he was authorized by BLG.

90.

Without authorization, Defendant Schneider took and misappropriated the proprietary BLG Data Set contained within BLG's SimplyConvert database.

91.

Plaintiffs have been injured by Schneider's unauthorized use of BLG's SimplyConvert database to take and misappropriate BLG's proprietary BLG Data Set.

92.

As a result, Plaintiffs are entitled to recover damages to be determined at trial and the costs of suit.

## COUNT III

### Violations of Georgia's Civil RICO Act

93.

Plaintiffs hereby re-allege and incorporate paragraphs 1 through 87 by reference.

-17-

94.

By undertaking the actions alleged in this Complaint, Defendants, and other unknown members of the conspiracy and criminal enterprise, committed, conspired to commit, and/or attempted to commit Theft of Trade Secrets, in violation of O.C.G.A. § 16-8-13.

95.

Defendant Schneider stole Plaintiffs' trade secrets, including:

- BLG's comprehensive data set maintained within SimplyConvert;

- BLG strategy documents;

- Confidential drafts of BLG consolidated financial statements;

- Return-on-investment analyses;

- Pricing proposals;

- Confidential and proprietary information concerning BLG's Vendors;

- Confidential and proprietary information concerning BLG's law firm referral partners;

- Confidential and proprietary information concerning BLG's law firm past and present banking partners;

- Client lists; and

- Plaintiffs' compensation information.

96.

This information is confidential, non-publicly accessible via proper means, and protected via various security measures implemented by BLG to ensure that their confidentiality is maintained.

-18-

97.

On information and belief, Defendant Schneider is directly or indirectly controlled by or acting in concert with the Defendants Mayer and Archetype.

98.

Defendants improperly used the same confidential files and trade secret information to attempt to extract $20 million from Plaintiffs, file a spurious lawsuit against Plaintiffs, and pressure vendors and referral sources to stop working with Plaintiffs.

99.

Through their coordinated efforts to steal Plaintiffs' trade secrets through a pattern of racketeering activity – the commission of the predicate acts described above – Defendants violated O.C.G.A. § 16-14-4(a).

100.

Defendants also violated O.C.G.A. § 16-14-4(c) by conspiring together to violate the RICO Act in order to steal from BLG.

101.

As alleged herein, Schneider, Mayer, and Archetype began this scheme to steal BLG's trade secrets.

102.

Evidence establishes that Defendants formed an enterprise in fact pursuant to O.C.G.A. § 16-14-3(3) and engaged in theft of trade secrets via the methods described above.

103.

Plaintiffs are entitled to remedial orders that prevent Defendants from continuing to engage in racketeering activity pursuant to O.C.G.A. §§ 16-14-6(a) and (b).

104.

Between 2024 and 2026, Defendants each participated in the aforementioned acts in furtherance of their enterprise as described herein.

105.

Plaintiffs are entitled to an award of actual damages, treble damages, punitive damages, and attorneys' fees against Defendants pursuant to O.C.G.A. § 16-14-6(c).

## COUNT IV

### Tortious Interference with Business Relations

106.

Plaintiffs hereby re-allege and incorporate paragraphs 1 through 100 by reference.

107.

BLG maintained business relationships with each vendor and referral source with which it worked on VGA litigation.

108.

BLG's vendors have been forced to secure counsel to advise them concerning Archetype's claim of ownership over the vendors' work product.

109.

Referral sources accounting for approximately 4,400 VGA cases ended their relationship with BLG on or before February 2, 2026.

110.

Defendants were strangers to the business relationship between Plaintiffs and their vendors and referral sources.

111.

Defendants acted improperly and without privilege when they contacted Plaintiffs' vendors and referral sources and pressured them to discontinue their business relationships with Plaintiffs.

112.

Defendants acted purposely and with malice with the intent to injure Plaintiffs as evidenced by Defendants' use of false information concerning Plaintiffs to pressure Plaintiffs' vendors and referral sources.

113.

Plaintiffs lost their ability to continue relationships with their vendors and referral sources due to Defendants' actions.

114.

Defendants' tortious interference with Plaintiffs' business relations has proximately caused damages to Plaintiffs in an amount to be determined at trial.

## COUNT VI

### Injunctive Relief

115.

Plaintiffs hereby re-allege and incorporate paragraphs 1 through 109 by reference.

116.

Plaintiffs seek a preliminary injunction to prohibit Defendants from using their confidential information which Defendants stole and from disseminating the confidential information to anyone, thereby maintaining the status quo, so that this case may proceed to discovery and a trial on the merits of Plaintiffs' claims described herein.

117.

Plaintiffs also seek permanent injunctive relief prohibiting Defendants from using their confidential information which Defendants stole and from disseminating the confidential information to anyone.

118.

Plaintiffs will suffer irreparable harm if an injunction does not issue. If Defendants continue to use and disseminate their confidential information, Plaintiffs will suffer grave financial injury, as Defendants seek to destroy Plaintiffs' relationships with vendors and referral sources and profit from the use of Plaintiffs' data.

119.

There is a substantial likelihood that Plaintiffs will succeed on the merits of their claims described herein.

120.

The balance of hardships favors the issuance of an injunction because Defendants do not stand to suffer any harm if an injunction issues: nothing currently prevents Defendants from using their own materials to conduct business. Plaintiffs, conversely, actively lose vendors, clients, and potential business while their proprietary and confidential information and trade secrets remain in the hands of Defendants.

121.

The public interest against theft and misappropriation of trade secrets and actual property of others supports the issuance of an injunction.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all triable issues.

-22-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

(a)     Compensatory and exemplary damages in an amount to be determined at

trial;

(b)     Punitive damages in an amount to be determined at trial;

(c)     All costs and expenses, including attorneys' fees;

(d)     Injunctive relief requiring Defendants to return to Plaintiffs all documents,

communications, data, or any other confidential information in Defendants'

possession that belongs to Plaintiffs; and Such other relief as the Court shall

deem just and equitable under the facts and circumstances of this case.

Respectfully submitted, this 20th day of March, 2026.

/s/ Charles P. Boring
Charles P. Boring
Georgia Bar No. 065131
cboring@robbinsfirm.com
Daniel J. Monahan
Georgia Bar No. 231344
dmonahan@robbinsfirm.com
Rachel F. Gage
Georgia Bar No. 547982
rgage@robbinsfirm.com
Andrew Mason
amason@robbinsfirm.com
Georgia Bar No. 565613
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA  30318
Telephone:     (678) 701-9381
Facsimile:     (404) 856-3255

Attorneys for Plaintiffs

-23-