**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARCHETYPE CAPITAL PARTNERS, LLC,<br>Plaintiff,<br>vs.<br>ANDREW SCHNEIDER,<br>Defendant. | Case No.: 2:25-cv-01686-GMN-BNW<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

Pending before the Court is the Motion for Reconsideration, (ECF No. 57), filed by non-party Bullock Legal Group. Plaintiff Archetype Capital Partners, LLC ("Archetype"), filed a Response, (ECF No. 80), to which BLG filed a Reply, (ECF No. 82). Further pending before the Court is the Motion to Stay the Court's Preliminary Injunction Order Pending Appeal, (ECF No. 67), filed by Defendant Andrew Schneider. Archetype filed a Response, (ECF No. 81), to which Schneider filed a Reply, (ECF No. 83).

For the reasons discussed below, the Court DENIES both the Motion for Reconsideration and Motion to Stay.

## I. <u>**BACKGROUND**</u>

This case arises out of Defendant Andrew Schneider and non-party Bullock Legal Group's alleged misappropriation of Plaintiff Archetype Capital Partners, LLC's trade secrets and breach of contract. (*See generally* First Amended Compl. ("FAC"), ECF No. 101). Douglas Mayer and Andrew Schneider founded Archetype in 2020 "with a vision to develop innovative litigation finance solutions for law firms." (Mayer Decl. ¶ 2, Ex. A to Mot. Prelim. Inj., ECF No. 10-2). From July 27, 2020, through February 18, 2025, Schneider served as an officer, director, or member of Archetype. (*Id.* ¶ 3). On June 28, 2023, Mayer and Schneider

executed the Operating Agreement of Archetype Capital Partners, LLC, (the "Operating Agreement"), which controls their business relationship. (*Id.* ¶ 4). Archetype alleges that it developed its own models for underwriting and reviewing litigation, claims, and lending solutions specific to mass tort litigation, such as video game addiction ("VGA") litigation. (*Id.* ¶ 5). Archetype further alleges that as a result of its investment and efforts, it created valuable trade secrets at issue in this lawsuit. (*Id.* ¶ 7).

**A. Mass Tort Claim Review Services**

Archetype alleges it developed and documented a proprietary framework for delivering comprehensive mass tort claim review services in July 2024, which included:

> creation of holistic claim packets tailored to all phases of mass tort litigation; proprietary guidelines for early, middle, and late-stage cases; targeted documentation requests designed to maximize efficiency; a standardized set of files that delivered all necessary claimant information and proof of injury in a scalable format; specialized screening protocols enabling identification of overlapping claims and comorbidities (for example, the connection between VGA and other mass tort allegations); use of proprietary information to accurately value cases earlier than competitors; and processes ensuring the right information was collected at intake and proactively surfacing issues that could affect a firms' mass tort portfolio.

(*Id.* ¶ 25). Around the same time, Archetype created a Vendor Outline that formalized Archetype's intake qualification, claims verification, and claims processing systems. (*Id.* ¶ 28).

As part of the comprehensive mass claim review process, Archetype expanded its proprietary systems into additional mass tort areas, including VGA, RealPage, Paraquat, Abbott Heavy Metals NEC, Camp Lejeune, and Asbestos litigation. (*Id.* ¶ 26). To expand the reach of these proprietary systems, Archetype contracted with a marketing firm. (*Id.* ¶ 29). This contract enabled Archetype to integrate its claim review framework with the marketing firm's lead generation and intake capabilities, broadening application and increasing effectiveness while allowing Archetype to retain control over its alleged trade secret methodologies. (*Id.*).

Archetype then marketed this combined solution to potential business opportunities. (*Id.* ¶ 30). In one such outreach, Schneider emailed a potential client describing Archetype's new claim review methodology:

> The most difficult part of mass torts is file review. . . . The experience in the space allows [Archetype] to provide a package that is more comprehensive than any of the current offerings on the market; and [Archetype] ha[s] the systems in place to handle the volume efficiently. The efficiency is gained from knowing the right questions to ask during intake. . . . It also allows [Archetype] to provide screening questions that your competitors do not have. . . . What we can offer is a comprehensive review with a standardized deliverable that removes the guesswork from the purchasers. . . . Depending on the stage of the mass tort; [Archetype] may also include the matrices and the claim value.

(July 2–25, 2024, Email Chain at 4, Ex. 6 to Mot. Prelim. Inj., 10-3). In another email exchange, Schneider explained what made Archetype standout from its competitors:

> The most important thing that [Archetype] do[es] differently from anybody else is provide a comprehensive claim packet that is ready for submission to a claims administrator. . . . [Archetype] provides [its] outlines of what would be considered a 'compensable' claim in each of the mass torts that [it] works in. If the Firm purchasing the retainers wishes to use [Archetype's] guidelines, they do not need to create the document requests because we already have the[m]. . . . Because of the spectrum of cases that [Archetype has] handled; [it] notices overlap in allegations and class members that can be detrimental to firms before they do.

(Email Re Proprietary Framework for Comprehensive Mass Tort Claim Review Services at 1, Ex. 3 to Mot. Prelim. Inj., ECF No. 10-3). Archetype alleges that these frameworks, protocols, and vendor systems represented the core of its trade secrets and its competitive edge in the mass tort industry. (Mayer Decl. ¶ 33, Ex. A to Mot. Prelim. Inj.).

**B. Archetype's RealPage and VGA Materials**

In June 2024, Archetype identified RealPage as a high-priority litigation opportunity. (*Id.* ¶ 37). In August 2024, Archetype began developing proprietary intellectual property and processes tailored to the RealPage antitrust litigation and related opportunities. (*Id.* ¶ 38). As part of this effort, Archetype compiled a comprehensive database, covering all defendants and

their properties in the RealPage litigation. The database included a cross-litigation overlap built from previous work on other mass torts and multi-district litigations, allowing Archetype to screen RealPage claimants for other tort opportunities by leveraging demographic, geographic, and facility data while maintaining claim-specific damage segregation. (*Id.* ¶¶ 39–41). Archetype states it had nearly completed its comprehensive defendant property database and step-by-step processing methodology for RealPage litigation by the end of November 2024. (*Id.* ¶ 42).

Archetype also created a "Video Game Addiction Litigation Overview" document in July 2024, integrating VGA into its broader mass tort claim assessment program. (*Id.* ¶ 34). Shortly thereafter, Archetype formally updated its Mass Tort Program to include VGA claims as a distinct area of focus. (*Id.* ¶ 34). By October 2024, Archetype finalized its service package for VGA litigation. This package included: (a) provider network integration; (b) scalable processing system; (c) a document for medical records collection titled "Document List to Confirm Injury by Tier and Process," which systematically categorized claimants by injury severity; and (d) a "Settlement Values by Range" document, which set out detailed valuation ranges for VGA claims. (*Id.* ¶ 35). Archetype alleges it further memorialized its methodology by creating the "Step by Step Video Game Addiction Litigation Review" in November 2024, which outlined Archetype's process for evaluating and reviewing VGA claims. (*Id.* ¶ 36).

**C. Archetype and Bullock Legal Group's Relationship**

Non-party Bullock Legal Group litigates complex mass tort and medical malpractice cases. (Bullock Legal Group ("BLG") Memo to Calumet Capital at 1, Ex. 18 to Mot. Prelim. Inj., ECF No. 10-3). The law firm serves as plaintiffs' counsel for a large VGA case and is responsible for overseeing the VGA case settlement with Defendant X.[1] (*Id.*). In May 2024,

[1] The Court refers to the principal corporate defendant in the VGA litigation as "Defendant X" to preserve confidentiality.

while Schneider was still working for Archetype, he connected with Bullock Legal Group when the law firm approached Archetype as a potential customer seeking Archetype's services in funding its VGA litigation. (BLG Email to Archetype re Services at 1, Ex. 19 to Mot. Prelim. Inj., ECF No. 10-3). Bullock Legal Group and Archetype then executed a Non-Disclosure Agreement ("NDA"). (*See generally* BLG NDA, Ex. 20 to Mot. Prelim. Inj., ECF No. 10-3). Bullock Legal Group did not end up utilizing Archetype's services.

**D. Alleged Misappropriation**

Archetype alleges that in May, June, or July 2024, while still working for Archetype, Schneider emailed Bullock Legal Group various documents and communications that Archetype claims contained trade secrets and confidential information. (Mayer Decl. ¶¶ 52–74, Ex. A to Mot. Prelim. Inj.). In early November 2024, Bullock Legal Group hired Schneider. (*Id.* ¶ 82). Archetype contends that Schneider continued to use Archetype's trade secrets and confidential information in his role with Bullock Legal Group. (*Id.* ¶¶ 83–111). Archetype further alleges that Bullock Legal Group has likewise used Archetype's trade secrets and confidential information to expand its litigation practice, and specifically to benefit its settlement with Defendant X. (*Id.* ¶ 112–132). Archetype avers that the use of its trade secrets and confidential information was still ongoing as of September 2025. (Mot. Prelim. Inj. 25:4–7).

**E. Preliminary Injunction**

Shortly after commencing this case, Archetype filed Motions for Temporary Restraining Order and Preliminary Injunction, (ECF Nos. 8, 9). On December 5, 2025, this Court granted, in part, and denied, in part, Archetype's Motion for Preliminary Injunction. (*See generally* Order Granting Prelim. Inj., ECF No. 48). The Court denied the Motion with respect to then-Defendant BLG, concluding that it lacked personal jurisdiction over BLG and dismissing it

from the case. (*Id.* 9:14–13:11).[2] The Court granted the Motion with respect to Defendant Schneider and ordered that:

(1) Schneider and those acting in concert with him are enjoined from using, disclosing, or transmitting Archetype's trade secrets and confidential information;

(2) Schneider is compelled to return all Archetype property and materials containing such information, including the company-issued laptop;

(3) The distribution of BLG and Schneider's share of the Defendant X settlement must be restrained and persevered;

(4) Schneider must preserve all evidence relevant to this action;

(5) Schneider is enjoined from soliciting or interfering with Archetype's customers, vendors, or partners through the use of misappropriated information; and

(6) Schneider is restrained from engaging in any business activities that violate the restrictive covenants imposed by the Operating Agreement.

(*Id.* 33:8–20).

## II. <u>LEGAL STANDARD</u>

### A. Motion for Reconsideration

Pursuant to Federal Rule of Civil Procedure ("FRCP") 59, a district court may grant a motion for reconsideration only where: (1) it is presented with newly discovered evidence; (2) it has committed clear error, or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004); *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Further, a "Rule 59(e)

---

[2] Archetype later filed a First Amended Complaint which asserted seven claims against BLG. (FAC ¶¶ 145–153, 169–212). BLG contends that the FAC does not affect their Motion for Reconsideration, and the Court agrees. (Mot. Dismiss 3:27–28, ECF No. 108).

motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890. Moreover, Rule 60(b) permits a court to grant relief from a final order on a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) other circumstances justifying relief. Rule 60(b)(1)–(6). "A party seeking reconsideration . . . must state with particularity the points of law or fact that the court has overlooked or misunderstood. Changes in legal or factual circumstances that may entitle the movant to relief also must be stated with particularity." LR 59-1. "Motions for reconsideration are disfavored." *Id.*

**B. Motion to Stay Pending Appeal**

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). Rather, a request for a stay pending appeal is committed to the exercise of judicial discretion, and the requesting party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In considering a motion to stay, courts consider (1) whether the movant has made a strong showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether a stay will substantially injure the nonmovant; and (4) where the public interest lies. *Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 426). "The first two factors . . . are the most critical," and the last two need only be considered if the first two are satisfied. *Id.* (citing *Nken*, 556 U.S. at 426, 435).

## III. DISCUSSION

Non-party BLG now moves for reconsideration of the Court's Order granting, in part, and denying, in part, Archetype's Motion for Preliminary Injunction ("Preliminary Injunction Order"). (*See generally* Mot. Reconsider., ECF No. 57). Defendant Andrew Schneider moves

for a stay pending his appeal of the same order. (*See generally* Mot. Stay, ECF No. 67). The Court addresses each motion in turn.

**A. BLG's Motion for Reconsideration**

BLG requests that the Court vacate the portions of the Preliminary Injunction Order that (1) indicate BLG "acted in active concert with Schneider's misconduct"; and (2) restrain distribution of BLG's share of funds from any Defendant X settlement. (Mot. Reconsider. 2:8–10). Specifically, BLG argues that because the Court dismissed it for lack of personal jurisdiction, it cannot be enjoined by the Preliminary Injunction Order. (*Id.* 4:18–6:8). BLG further contends that while FRCP 65(d)(2)(C) makes an injunction binding on non-parties who receive notice of the injunction and are "in active concert or participation with" the parties or their agents, it cannot be applied to BLG here. (*Id.* 6:9–9:4).

As an initial matter, BLG points to no newly discovered evidence nor an intervening change in controlling law. Instead, BLG appears to argue that the Court committed clear error because (1) BLG cannot be enjoined absent personal jurisdiction, (2) the Court cannot make a finding that BLG acted in concert with Schneider absent personal jurisdiction, and (3) even if it could make such a finding, it was error to conclude that BLG acted in concert with Schneider. (*See generally id.*). The Court addresses each in turn.

**1. Lack of Personal Jurisdiction**

It is well-settled that a "federal court may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985). However, Courts in the Ninth Circuit often enjoin the activities of specific non-parties so long as the party moving for the injunction establishes that the (1) the non-party has actual notice of the enjoined conduct and (2) either aided and abetted the enjoined party in the unlawful conduct or that the non-party is "legally identified" with the enjoined party. *Consumer Fin. Prot. Bureau v. Howard Law, P.C.*, 671 F. Appx. 954, 955 (9th Cir. 2016) (quoting *NLRB v. Sequoia Dist. Council of*

*Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977)); *see also Patagonia, Inc. v. Agnew*, No. 2:25-cv-03283-CV-SK, 2025 WL 1617182, at *11 (C.D. Cal. June 5, 2025) (collecting cases).

Conversely, Courts decline to issue injunctions against non-parties where the moving party does not sufficiently establish a connection between the non-party and the enjoined party. For example, in *cPanel, LLC v. Asli*, 719 F. Supp. 3d 1133 (D. Or. 2024), while the court concluded that the plaintiff had satisfied all four *Winter* factors, it found that the requested preliminary injunction was overbroad as to non-parties. *Id.* at 1153–54. Specifically, the court found that it was inappropriate to expressly name non-parties in the injunction because they had not been given notice and an opportunity to be heard and because the plaintiff had failed to show that the non-parties were in privity with defendants or that they aided and abetted defendants in their activities. *Id.* at 1154–55.

Against this backdrop, BLG's first and second arguments necessarily fail. The FRCP 65(d) framework expressly permits Courts to bind non-parties acting in concert with enjoined parties in an injunction. Here, BLG was afforded an opportunity to be heard—it appeared in this case and actively opposed Archetype's Motion for Temporary Restraining Order. (*See generally* BLG Resp. Mot. TRO, ECF No. 24). Further, as the Court explained in its Preliminary Injunction Order, Archetype established a likelihood that the multi-billion-dollar Defendant X Settlement was structured on Archetype's proprietary methodologies through Schneider's disclosure of trade secrets and confidential information to BLG. (Prelim. Inj. 30:5–8). Accordingly, the Court concludes that its lack of personal jurisdiction over BLG does not preclude enjoining it from receiving its share of the Defendant X settlement.

**2. Privity**

The Court next turns to BLG's third argument, that the Court nonetheless erred in concluding that BLG acted in concert with Schneider. FRCP 65(d)(2)(C) allows courts to

enjoin anyone "in active concert or participation" with the enjoined party. "The Supreme Court has interpreted this language to allow injunctions to bind not only defendants but also people identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th[t] 468, 483 (9th Cir. 2022) (quoting *Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 179 (1973)) (internal quotation marks omitted). A finding of legal identity may be based on either the non-party's close affiliation with the enjoined party prior to the injunction or its status as a successor to the enjoined party after the entry of the injunction. *Howard Law, P.C.*, 671 F. Appx at 955 (citing *Golden State Bottling Co.*, 414 U.S. at 179–80).

BLG contends that the Court erred in concluding that it acted in active concert with Schneider because it is not legally identified with Schneider. Specifically, BLG argues that the agreement that Schneider allegedly breached does not present a sufficiently close relationship to justify a finding that BLG acted in concert with Schneider. (*See* Mot. Reconsider 7:12–9:4). BLG further contends that because it engaged Schneider "through an arm's-length agreement that now presents a conflict of interest," it cannot be considered "in privity" with Schneider. (*Id.* 7:21–23). These arguments fail to establish clear error in the Preliminary Injunction Order. As Archetype points out, it established a likelihood that BLG and Schneider were in privity by showing that (1) BLG employed Schneider, (2) Schneider represented to third parties that he was acting on BLG's behalf, and (3) BLG authorized Schneider to negotiate settlement frameworks. (Resp. Mot. Reconsider 15:3–12, ECF No. 80). *See, e.g.*, *Robinson v. Best Price Distrib., LLC*, 2022 WL 3013131, at *5 (C.D. Cal. June 14, 2022) (finding non-party acted in concert with enjoined party because of prior business relationships).

Moreover, Archetype provided evidence showing that BLG knew or had reason to know that Schneider was making use of Archetype's proprietary information. Specifically, Archetype explained that, among other things, Schneider sent BLG (1) documents prepared by

Archetype for VGA litigation, (2) Archetype's proprietary methodology concerning claim quantification, and (3) Archetype's Mastercard Visa litigation materials. (Mayer Decl. ¶¶ 60, 71, Ex. A to Mot. Prelim. Inj.). Schneider also sent memoranda to litigation funders on behalf of BLG which "substantially replicated" internal Archetype documents. (*Id.* ¶ 62). BLG was aware that Schneider had worked with Archetype—just one month prior to hiring him, Schneider himself connected BLG to Archetype. (BLG Email to Archetype re Services at 1, Ex. 19 to Mot. Prelim. Inj.). Other Courts in this Circuit have concluded that non-parties acted in concert with parties to the litigation on similar showings. For example, the district court in *Pyro Spectaculars North, Inc. v. Souza* found that non-parties were acting in concert with the defendant to misappropriate trade secrets where they received internal documents previously belonging to the defendant's employer. 861 F. Supp. 2d 1079, 1094 (E.D. Cal. 2012).

Accordingly, because the Court concludes that it did not commit clear error in the Preliminary Injunction Order, BLG's Motion for Reconsideration is DENIED.

**B. Schneider's Motion to Stay**

The Court next turns to Schneider's Motion to stay the Preliminary Injunction Order pending his appeal to the Ninth Circuit. The Court addresses each of the *Nken* factors in turn, beginning with Schneiders likelihood of success on the merits.

**1. Likelihood of Success on the Merits**

When considering the stay applicant's showing of likelihood of success on the merits, it is "not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (citation and internal quotation marks omitted). However, this does not mean that an applicant must show that success is "more likely than not." *Leiva–Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (per curiam). Rather, the Ninth Circuit has explained that the moving party must show that there is "a substantial case for relief on the merits." *Id.* at 967–68. Here, Schneider argues that he is likely to succeed on the merits his appeal because (1) the

Preliminary Injunction Order is impermissibly vague, (2) the absence of oral argument despite the presence of material factual disputes is reversible error, and (3) the Court erred in interpreting the confidentiality provision of the operative contract between the parties. (Mot. Stay 2:14–14:2). The Court addresses each in turn.

Schneider first argues that the Preliminary Injunction Order does not describe the trade secrets allegedly misappropriated by Schneider with enough specificity to satisfy the requirements of FRCP 65(d)(1)(C). (*Id.* 3:11–9:22). Specifically, Schneider takes issue with what he describes as "broad, nonspecific categories" of trade secrets identified in the Preliminary Injunction Order. (*Id.* 4:19–20). Schneider further contends that in relying on the parties' briefs, the Preliminary Injunction Order also stated the trade secrets with insufficient specificity, violating FRCP 65. (*Id.* 4:5–18). However, the Preliminary Injunction Order did describe the specific trade secrets identified by Archetype, in part using Schneider's own words. (Prelim Inj. 2:15–5:1). The Order further described the specific documents and internal protocols that Archetype developed for VGA litigation, which is reproduced above. (*see* Section (I)(B)); (Prelim. Inj. 4:3–5:1).

To be sure, some of the language used to describe Archetype's alleged trade secrets was general in nature. (*See* Prelim. Inj. 15:9–17) (describing, *inter alia*, "settlement frameworks and valuation models; claim quantification criteria and intake protocols; case inventory and growth analytics"). But that level of generality falls far short of the examples of impermissibly vague injunctions cited by Schneider. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013) (finding that use of the phrase "Infringement-Related Terms" without a description of the referenced terms was impermissibly vague). Moreover, the Order's initial description of Archetype's alleged trade secrets was more particularized. (Prelim. Inj. 2:15–5:1).

The Court thus maintains its judgment that the level of detail employed was "sufficient

to put Schneider on notice of Archetype's alleged trade secrets." (Prelim. Inj. 15:17–22) (citing *Fujikura Composite Am., Inc. v. Dee*, No. 24-CV-782 JLS (MSB), 2024 WL 3261214, at *7 (S.D. Cal. June 28, 2024) ("the reasonable particularity standard does not require explication of the trade secrets down to the finest detail or require a mini-trial on misappropriation," but rather "ensures defendants have sufficient information to prepare a rebuttal.") (citation modified). However, the Court cannot conclude that Schneider shows merely a negligible likelihood of success on appeal through this argument.

Schneider next argues that the Court's decision not to hold a hearing is reversible error. (Mot. Stay 9:23–10:21). However, this argument is unpersuasive. First, Schneider relies on out-of-circuit authority for his assertion that it is an abuse of discretion not to hold a hearing before issuing an injunction when issues of material fact exist. (*Id.* 10:2–8) (citing *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004)). Further, as Archetype points out, the Ninth Circuit has "rejected any presumption in favor of evidentiary hearings, especially if the facts are complicated." *Kenneally v. Lungren*, 967 F.2d 329, 335 (9th Cir. 1992) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990)). The record here was particularly substantial and was addressed thoroughly by the parties in their briefing on the Motions for Temporary Restraining Order and Preliminary Injunction. However, given that Schneider did aver in his Declaration that some of Archetype's purported trade secrets were not proprietary, (ECF No. 23), the Court again declines to conclude that he shows merely a negligible likelihood of success. (*See* Schneider Decl. ¶¶ 10–13, ECF No. 23).

Schneider finally argues that the Court erred in finding that Archetype had shown a likelihood of success on its breach of contract claim. (Mot. Stay 10:25–13:23). However, as Archetype points out, Schneider did not directly respond to Archetype's breach of contract claim in the briefing on the Motions for Temporary Restraining Order and Preliminary Injunction. (*See* Prelim. Inj. at 20 n.9). However, given these three arguments, the Court still

cannot conclude that Schneider has shown only a negligible likelihood of success on appeal. Accordingly, the Court determines that this factor is neutral.

**2. Irreparable Harm to Schneider**

When analyzing the irreparable harm factor, courts must determine "whether the applicant will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. The moving party need only show that there is a probability of irreparable injury if the stay is not granted. *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) (citing *Leiva–Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (per curiam)). In analyzing the probability of irreparable injury, courts must "focus on the individualized nature of irreparable harm and not on whether it is 'categorically irreparable.'" *Id.* (quoting *Nken*, 556 U.S. at 435). "[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva–Perez*, 640 F.3d at 965.

The Court concludes that this factor weighs in favor of a stay. Here, Schneider contends that, absent a stay, he will essentially be precluded from practicing law, alleging that he has been prevented from participating in active litigation by his co-counsel for fear of violating the Preliminary Injunction Order. (Mot. Stay 14:9–17); (Schneider Mot. Stay Decl. ¶ 5, ECF No. 67-1). Archetype contends in response that any difficulty Schneider is experiencing in practicing law is "self-inflicted," but Schneider contends that the roadblocks to continued practice have been put in place by Archetype's attempts to enforce the Preliminary Injunction Order. Given the relatively low bar that the Ninth Circuit has accorded this factor, the Court concludes that Schneider has shown a probability of irreparable harm, and that this factor weighs in favor of a stay. *See Lair*, 697 F.3d at 1214.

**3. Substantial Injury to Archetype**

The Court next turns to the third *Nken* factor, which considers whether a stay will "substantially injure the nonmovant." 556 U.S. at 426. Schneider asserts that a stay would not

substantially injure Archetype because all they will lose is money, which he contends does not constitute irreparable harm. (Mot. Stay 15:1–16:13). However, as the Court explained in its Preliminary Injunction Order, "the loss of one's [business] does not carry merely monetary consequences; it carries emotional damages and stress, which cannot be compensated by mere back payment of [losses]." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009); (Prelim. Inj. 24:4–7). Further, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

The Court thus concludes that this factor weighs against a stay. As explained in the Preliminary Injunction Order, there is much more than monetary damage at stake. Because of Schneider's alleged misappropriation of Archetype's trade secrets, it faces the likelihood of being cut out of its own market because firms across the industry could access and apply Archetype's systems while bypassing it entirely. (Prelim. Inj. 24:12–19) (citing Mot. Prelim. Inj. 31:18–19, ECF No. 9).

**4. The Public Interest**

The Court finally considers the fourth *Nken* factor, which asks whether a stay is in the public interest. *Nken*, 556 U.S. at 426. The Court concludes that this factor also weighs against a stay. Here, Schneider largely echoes his argument that Archetype is unlikely to succeed on the merits of its case. (Mot. Stay 16:22–26). However, as explained above, the Court concluded that the first *Nken* factor is neutral with respect to granting the stay. (*See* Section (III)(B)(1)). Further, as the Court explained in its Preliminary Injunction Order, "there is a strong public interest in protecting trade secrets, as evidenced by the existence of the DTSA and [NUTSA]." *Protection Techs., Inc. v. Ribler*, No. 3:17-cv-00144-LRH-WGC, 2017 WL 923912, at *3 (D. Nev. Mar. 8, 2017); (Prelim. Inj. 26:20-22). While Schneider appeals to countervailing interests of "open competition and innovation," the cases he cites in support

expressly rejected the argument that those interests overrode the harm faced by misappropriation of trade secrets. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985).

In balancing the *Nken* factors, the Court finds the first to be neutral, the second to favor a stay, and the third and fourth to favor rejecting a stay. On balance, the Court finds that the potential for substantial injury to Archetype and the public interest against appropriation of trade secrets, reflected in the third and fourth factors, outweigh any potential irreparable harm to Schneider discussed in the second factor. The Court thus DENIES Schneider's Motion to Stay.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that BLG's Motion for Reconsideration, (ECF No. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that Schneider's Motion to Stay the Court's Preliminary Injunction Order Pending Appeal, (ECF No. 67), is **DENIED**.

**DATED** this 28 day of September, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT